Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/16/2019 12:07 AM CDT

State of Nebraska, appellee, v.
Reginald B. Briggs, appellant.
___ N.W.2d ___

Filed June 14, 2019.    Nos. S-17-1183, S-17-1321.

1. **Pleadings: Parties: Judgments: Appeal and Error.** A denial of a motion to sever will not be reversed unless clear prejudice and an abuse of discretion are shown, and an appellate court will find such an abuse only where the denial caused the defendant substantial prejudice amounting to a miscarriage of justice.

2. **Rules of Evidence: Judgments: Words and Phrases: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

3. **Juries: Discrimination: Prosecuting Attorneys: Appeal and Error.** An appellate court reviews de novo the facial validity of an attorney's race-neutral explanation for using a peremptory challenge as a question of law. It reviews for clear error a trial court's factual determination regarding whether a prosecutor's race-neutral explanation is persuasive and whether the prosecutor's use of a peremptory challenge was purposefully discriminatory.

4. **Motions for Mistrial: Appeal and Error.** Decisions regarding motions for mistrial are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion.

5. ____: ____. The standard of review for the denial of a motion for new trial is whether the trial court abused its discretion in denying the motion.

6. **Sentences: Appeal and Error.** A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court.

7. **Constitutional Law: Trial: Joinder.** A defendant has no constitutional right to a separate trial on different charges.

8. **Trial: Joinder: Appeal and Error.** Under Neb. Rev. Stat. § 29-2002 (Reissue 2016), the question of whether offenses are properly joined involves a two-stage analysis. First, a court must determine whether the offenses were sufficiently related to be joinable, and then it must determine whether an otherwise proper joinder was prejudicial to the defendant.

9. ____: ____: ____. There is no error under Neb. Rev. Stat. § 29-2002 (Reissue 2016) if joinder was not prejudicial.

10. ____: ____: ____. A denial of a motion to sever will be reversed only if clear prejudice and an abuse of discretion are shown. An appellate court will find such an abuse only where the denial caused the defendant substantial prejudice amounting to a miscarriage of justice.

11. **Trial: Joinder: Proof.** A defendant opposing joinder of charges has the burden of proving prejudice.

12. ____: ____: ____. To prove prejudice in opposing joinder, a defendant must show compelling, specific, and actual prejudice from the court's refusal to grant the motion to sever.

13. **Trial: Joinder.** Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that the defendant would have had in a severed trial.

14. **Trial: Joinder: Juries: Evidence.** Joined charges do not usually result in prejudice if the evidence is sufficiently simple and distinct for the jury to easily separate evidence of the charges during deliberations.

15. **Rules of Evidence: Other Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith.

16. ____: ____. Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 2016), does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime.

17. ____: ____. Inextricably intertwined evidence includes evidence that forms part of the factual setting of the crime and evidence that is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts. Evidence of other crimes or bad acts is also inextricably intertwined with the charged crime if the other crimes or bad acts are necessary for the prosecution to present a coherent picture of the charged crime.

18. **Constitutional Law: Juries: Discrimination: Proof.** In order to establish a prima facie violation of the fair-cross-section requirement under the Sixth Amendment, a defendant must show (1) that the group alleged to be excluded is a distinctive group in the community, (2) that the

representation of the group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

19. **Juries: Discrimination: Prosecuting Attorneys: Proof.** Determining whether a prosecutor impermissibly struck a prospective juror based on race is a three-step process. In this three-step process, the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

20. **Juries: Discrimination: Prosecuting Attorneys: Appeal and Error.** Once the trial court has decided the ultimate question of intentional discrimination in a prosecutor's strike of a prospective juror, the questions on appeal are only whether the prosecutor's reasons were facially race neutral and whether the trial court's final determination regarding purposeful discrimination was clearly erroneous.

21. **Juries: Discrimination: Prosecuting Attorneys.** Whether a prosecutor's reasons for using peremptory challenges are race neutral is a question of law. A trial court's determination that the prosecutor's race-neutral explanation should be believed, on the other hand, frequently involves evaluation of a prosecutor's credibility, which requires deference to the court's findings absent exceptional circumstances.

22. ____: ____: ____. In determining whether a prosecutor's explanation for using a peremptory challenge is race neutral, a court is not required to reject an explanation because it is not persuasive, or even plausible; it is sufficient if the reason is not inherently discriminatory.

23. ____: ____: ____. A prosecutor's intuitive assumptions, inarticulable factors, or even hunches can be proper bases for rejecting a potential juror, so long as the reasons are not based on impermissible group bias.

24. **Motions to Dismiss: Directed Verdict: Waiver: Appeal and Error.** A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict but may still challenge the sufficiency of the evidence.

25. **Criminal Law: Motions for Mistrial: Proof: Appeal and Error.** A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. The defendant must prove that the alleged

error actually prejudiced him or her, rather than creating only the possibility of prejudice.

26. **Motions for Mistrial: Motions to Strike: Appeal and Error.** Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material.

27. **Assault: Weapons.** First degree assault can serve as the predicate offense of use of a deadly weapon to commit a felony.

28. **Criminal Law: Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

29. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial is plainly evident from the record, affects a litigant's substantial right, and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

30. **Sentences: Appeal and Error.** The failure to impose an indeterminate sentence when required by statute constitutes plain error.

31. **Sentences: Pretrial Procedure.** A defendant is not entitled to credit for time served when he or she is awaiting trial and sentencing on charges, but is also serving another sentence.

32. **Habitual Criminals: Sentences.** The habitual criminal statute does not enhance the penalty for prior convictions, but is applied to the penalty for the triggering offense, and thus, the fact that the penalty for a prior conviction was itself enhanced does not result in a double penalty enhancement of the triggering offense. Instead, even convictions that are enhanced under a specific subsequent offense statute can be used as prior convictions so long as they meet the statutory requirement that such convictions resulted in terms of imprisonment of not less than 1 year.

33. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

34. **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct,

and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

35. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeals from the District Court for Douglas County: W. Mark Ashford, Judge. Judgment in No. S-17-1183 affirmed in part, and in part vacated and remanded for resentencing. Judgment in No. S-17-1321 affirmed in part, and in part vacated.

Ernest H. Addison, Jr., and A. Michael Bianchi for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

A jury found Reginald B. Briggs guilty of manslaughter, use of a deadly weapon to commit a felony, possession of a deadly weapon by a prohibited person, and pandering. Briggs later pleaded guilty to another charge of pandering, which had been severed from the other charges prior to trial. Briggs now appeals a number of issues pertaining to his convictions and sentences. We find no merit to his various assignments of error. We do find plain error in his sentencing and thus vacate his sentences in part and remand the matter for resentencing.

BACKGROUND

*Information and Pretrial Motions.*

An amended information charged Briggs with 7 counts: first degree murder with the victim alleged to be Teresa Longo, use of a deadly weapon to commit a felony, possession of a

deadly weapon by a prohibited person, pandering with the victim alleged to be Longo, pandering with the victim alleged to be Raynette Heidt, and two charges of third degree domestic assault. The information also alleged that Briggs was a habitual criminal.

Prior to trial, Briggs filed motions to sever the pandering and domestic assault counts from the other charges. At a hearing on the motions, the State conceded to severance of the domestic assault charges. The district court also granted the motion as to the pandering charge in which Heidt was the alleged victim. The court declined to sever the pandering charge in which Longo was the alleged victim and ordered that it be joined for trial with the murder and weapons charges.

After the district court's order on Briggs' severance motion, the State filed a motion in limine in which it sought an order authorizing it to adduce evidence of Briggs' pandering of Heidt at the trial on the murder, weapons, and pandering of Longo charges. The district court granted the motion in limine. In a written order, it found that evidence of Briggs' pandering of Heidt was inextricably intertwined with the charged crimes.

*Evidence Presented at Trial.*

A jury trial was held on the murder and weapons charges and on the pandering charge alleging Longo to be the victim. The most relevant evidence for purposes of this appeal will be detailed below.

Much of the evidence concerning pandering came from testimony of Heidt. Heidt testified that she has known Briggs since 2009 and that they began a romantic relationship in December 2013. At some point in 2015, both Briggs and Longo started residing with Heidt and her two children at a house in Omaha, Nebraska. Heidt testified that during that time, she, Briggs, and Longo were engaged in prostitution, with Heidt and Longo acting as prostitutes and Briggs acting as their "pimp" by controlling the finances and

deciding if and when Heidt and Longo were going to engage in prostitution.

Heidt testified that she would place advertisements both for herself and for Longo on a website used to advertise prostitution. Briggs directed her to post the advertisements and provided money to place them. Heidt and Longo engaged in prostitution in various hotels in the area, and the rooms were paid for by Briggs. Briggs set the prices to be charged per hour, and Heidt and Longo would be paid in cash, which they would give to Briggs. Records from various hotels in the area were entered into evidence, showing rooms booked in either Briggs' or Longo's name during the summer of 2015.

Heidt also provided testimony regarding Longo's disappearance. She testified that at some point in the early morning of September 17, 2015, Briggs told Longo to gather her belongings and leave with him. Longo then left with Briggs, taking with her a red suitcase she often took when going out for the evening. Heidt never saw Longo again.

Briggs returned to the house without Longo a few hours later. When he arrived, Briggs washed all of his clothing in the washing machine even though he did not typically do his own laundry. After showering and getting dressed, and while it was still dark outside, Briggs made Heidt drive him to a nearby creek without using the car's headlights. Briggs got out of the car, walked around to the back, and retrieved his jacket, which appeared to be concealing something inside it as he carried it in his arms. When Briggs returned about 5 minutes later, he was still carrying the jacket, but it appeared lighter, as if there was no longer anything inside.

Heidt testified that Briggs owned a shotgun and that as of August 2015, he was keeping the shotgun beneath the stairs of their basement. Heidt testified that the last time she saw the shotgun in that location was the first week in September.

Nathan Jandreau, an acquaintance of Briggs, testified that sometime in September 2015, Briggs came to his home. Jandreau testified that during that visit, Briggs pulled Jandreau

aside and whispered to him that Briggs "fucked up." When asked to explain, Briggs said, "I accidentally shot the bitch." When Jandreau asked whom Briggs had shot, Briggs replied, "the white girl." Jandreau then asked for more details, and Briggs said that "he was trying to scare her and the gun accidentally went off." Briggs added that he had left the body in Jandreau's house.

Jandreau understood Briggs to be referring to a home in which he had previously resided. After Jandreau moved out of that home, no one resided in it, but it was always unlocked and many people sold drugs and guns out of it. Two days after the conversation between Jandreau and Briggs, Jandreau went to that location. As he walked by the bathroom, he saw feet sticking out of the shower. Jandreau left, but later told law enforcement about the body after he was arrested for an unrelated crime at the end of September 2015.

Based on the information provided by Jandreau, police officers obtained a search warrant and visited the home. Upon entering the home, one of the investigating officers smelled an odor he associated with decaying flesh. In the living room area, the officers found a red suitcase. The officers located a female body in the shower. A purse containing identification and debit cards with Longo's name was found near the body. The body was identified as Longo's based on a thumbprint.

An autopsy revealed a large wound in the back of Longo's head. The inside of the skull, where the brain would usually sit, was exposed. The forensic pathologist who performed the autopsy concluded, based on a number of factors, that the cause of death was a close-range shotgun wound to the back of the head. A forensic entomologist analyzed maggots found on Longo's body and determined that she died between September 15 and 21, 2015.

*Jury's Verdicts and Sentencing.*

The jury did not convict Briggs of the charged crime of first degree murder, but instead convicted him of manslaughter.

It also convicted him of the other charges of use of a deadly weapon to commit a felony, possession of a deadly weapon by a prohibited person, and pandering. Briggs filed a motion for new trial, which was overruled.

The district court determined Briggs qualified as a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 2016) and sentenced him accordingly. The district court sentenced Briggs to 20 years' imprisonment for manslaughter, 40 to 50 years' imprisonment for use of a deadly weapon to commit a felony, 10 years' imprisonment for possession of a deadly weapon by a prohibited person, and 10 years' imprisonment for pandering. The sentences for these charges were ordered to be served consecutively, and Briggs was awarded 764 days' credit for time served. Briggs timely appealed.

*Disposition of Severed Charges.*

Pursuant to a plea agreement, Briggs later entered a plea of no contest to the previously severed charge of pandering involving Heidt and the State dismissed the remaining domestic assault charges. The district court accepted the no contest plea and sentenced Briggs to 10 years' imprisonment with the sentence to be served concurrently with his other sentences. In the sentencing order, the district court awarded Briggs 794 days' credit for time served. Briggs also timely appealed his conviction and sentence for this charge.

## ASSIGNMENTS OF ERROR

Briggs assigns nine errors on appeal, which we have condensed and restated as follows: The district court erred (1) in denying the motion to sever the pandering charge, (2) in admitting evidence of Briggs' pandering of Heidt, (3) in denying Briggs' challenges to jury selection, (4) in denying Briggs' motions for mistrial, (5) in denying Briggs' motion to dismiss at the conclusion of the State's case, (6) in denying Briggs' motion for new trial, (7) in finding Briggs to be a habitual criminal, and (8) in imposing excessive sentences.

## STANDARD OF REVIEW

[1] A denial of a motion to sever will not be reversed unless clear prejudice and an abuse of discretion are shown, and an appellate court will find such an abuse only where the denial caused the defendant substantial prejudice amounting to a miscarriage of justice. *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018), *disapproved on other grounds, State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018).

[2] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013).

[3] An appellate court reviews de novo the facial validity of an attorney's race-neutral explanation for using a peremptory challenge as a question of law. It reviews for clear error a trial court's factual determination regarding whether a prosecutor's race-neutral explanation is persuasive and whether the prosecutor's use of a peremptory challenge was purposefully discriminatory. *State v. Wofford*, 298 Neb. 412, 904 N.W.2d 649 (2017).

[4] Decisions regarding motions for mistrial are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016).

[5] The standard of review for the denial of a motion for new trial is whether the trial court abused its discretion in denying the motion. *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016).

[6] A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Erickson*, 281 Neb. 31, 793 N.W.2d 155 (2011).

## ANALYSIS

*Denial of Motion to Sever.*

We begin our analysis with Briggs' argument that the district court committed reversible error by not severing the pandering charge involving Longo from the other charges upon which Briggs was tried.

[7] A defendant has no constitutional right to a separate trial on different charges. *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014). Instead, Neb. Rev. Stat. § 29-2002 (Reissue 2016) controls the joinder or separation of charges for trial and states, in relevant part:

> (1) Two or more offenses may be charged in the same indictment, information, or complaint . . . if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
>
> . . . .
>
> (3) If it appears that a defendant or the state would be prejudiced by a joinder of offenses . . . for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires.

[8] Under these provisions of § 29-2002, the question of whether offenses are properly joined involves a two-stage analysis. First, a court must determine whether the offenses were sufficiently related to be joinable, and then it must determine whether an otherwise proper joinder was prejudicial to the defendant. See *Knutson, supra*.

[9,10] But while subsections (1) and (3) of § 29-2002 present two separate questions, we have held that there is no error under either subsection if joinder was not prejudicial. See *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018), *disapproved on other grounds, State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018). Accordingly, a denial of

a motion to sever will be reversed only if clear prejudice and an abuse of discretion are shown. *Id.* An appellate court will find such an abuse only where the denial caused the defendant substantial prejudice amounting to a miscarriage of justice. *Id.*

[11-13] A defendant opposing joinder of charges has the burden of proving prejudice. *Id.* To carry that burden, a defendant must show compelling, specific, and actual prejudice from the court's refusal to grant the motion to sever. Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that the defendant would have had in a severed trial. *Id.*

Briggs argues both that the pandering charge involving Longo was not sufficiently related to the other charges upon which he was tried and that this joinder was prejudicial to him. We, however, need not consider whether the pandering charge was properly joined with the other counts, because, as we will explain, Briggs has not demonstrated prejudice from the joinder.

[14] Joined charges do not usually result in prejudice if the evidence is sufficiently simple and distinct for the jury to easily separate evidence of the charges during deliberations. *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014). In this case, we believe that the evidence was such that the jury could have easily separated evidence of the charges during deliberations. The evidence that Briggs committed pandering was distinct from the evidence related to the other charges. The evidence of pandering concerned Briggs' acting as a "pimp" for Heidt and Longo between June 1 and September 17, 2015. The evidence of other charges was primarily Longo's disappearance on September 17, the subsequent discovery of her body, and evidence tending to show Briggs' involvement in her death. We perceive little risk that the jury could not separate the charges and associated evidence.

Furthermore, the record demonstrates that the jury did separately evaluate whether the State met its burden as to each

charge. While it convicted Briggs of pandering, it did not convict him of the charged crime of first degree murder. Because Briggs cannot show he was prejudiced by the denial of his motion to sever, this assignment of error lacks merit.

*Admission of Evidence That
Briggs Pandered Heidt.*

We next turn to Briggs' contention that the district court committed reversible error by allowing the State to introduce evidence involving his pandering of Heidt. As noted above, the State charged Briggs with two counts of pandering, one alleging Longo to be the victim and one alleging Heidt to be the victim. The district court severed the pandering charge involving Heidt, but it nonetheless allowed the State to introduce evidence of Briggs' pandering of Heidt at the trial concerning other charges. Briggs contends that this evidence was inadmissible under Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404(2) (Reissue 2016). We disagree.

[15-17] Under rule 404(2), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. Rule 404(2) does not apply, however, to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime. *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013). Inextricably intertwined evidence includes evidence that forms part of the factual setting of the crime and evidence that is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts. See *State v. Parnell*, 294 Neb. 551, 883 N.W.2d 652 (2016). Evidence of other crimes or bad acts is also inextricably intertwined with the charged crime if the other crimes or bad acts are necessary for the prosecution to present a coherent picture of the charged crime. See *id.*

In this case, the evidence showed that Briggs was pandering Heidt at the same time he was pandering Longo. Indeed,

Heidt had the knowledge to testify about Briggs' relationship with and pandering of Longo because Briggs was pandering her at the same time. Evidence of Heidt's relationship with Briggs and Longo was necessary for the State to present a coherent picture of its allegations that Briggs pandered Longo and eventually killed her. And a complete picture of Heidt's relationship with Briggs and Longo could be portrayed only by allowing evidence of Briggs' pandering of Heidt.

Because the evidence of Briggs' pandering of Heidt was inextricably intertwined with evidence of the charged crimes, rule 404(2) did not apply. This assignment of error also lacks merit.

*Challenges to Selection of Jury.*

Briggs also argues that the district court committed reversible error by overruling challenges he made to the jury selection in this matter. Briggs makes two separate arguments regarding jury selection. He contends that he was deprived of a jury which accurately and correctly reflected a fair, impartial, and representative cross-section of the community and that the State used peremptory challenges on certain jurors solely because of their race, contrary to *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). We take up these challenges in turn.

[18] Briggs contends that there were 42 prospective jurors and that out of this group, there were two African-Americans and one "similarly situated minority." Brief for appellant at 33. This, Briggs claims, violated the fair-cross-section requirement under the Sixth Amendment to the U.S. Constitution. In order to establish a prima facie violation of the fair-cross-section requirement, a defendant must show (1) that the group alleged to be excluded is a distinctive group in the community, (2) that the representation of the group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) that this underrepresentation is due to systematic exclusion of the group

in the jury selection process. *State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002).

Briggs offered little argument or evidence in the trial court in support of a fair-cross-section challenge. His counsel did point out the prospective jurors included two African-Americans and one other juror "who might be considered a person of color," but most of the focus in his challenge to the jury selection was directed at the State's use of peremptory strikes. But even assuming Briggs adequately raised a fair-cross-section challenge in the district court, and even if we assume that the other elements necessary to establish a prima facie violation were present, there is no evidence that underrepresentation of racial minorities was due to systematic exclusion in the jury selection process. Absent such evidence, Briggs cannot prevail on a fair-cross-section claim. See *Thomas, supra*.

Moving to Briggs' challenge under *Batson, supra*, our focus shifts to the State's use of peremptory strikes. Briggs challenges the State's use of peremptory strikes on two prospective jurors, contending that the challenges were used solely because of the prospective jurors' race. We will briefly review the standards for resolving such challenges before applying them in this case.

[19] Determining whether a prosecutor impermissibly struck a prospective juror based on race is a three-step process. *State v. Clifton*, 296 Neb. 135, 892 N.W.2d 112 (2017). In this three-step process, the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. *Id.* First, a defendant must make a prima facie showing that the prosecutor exercised a peremptory challenge because of race. Second, assuming the defendant made such a showing, the prosecutor must offer a race-neutral basis for striking the juror. And third, the trial court must determine whether the defendant has carried his or her burden of proving purposeful discrimination. *Id.*

[20,21] Once the trial court has decided the ultimate question of intentional discrimination, however, the questions on

appeal are only whether the prosecutor's reasons were facially race neutral and whether the trial court's final determination regarding purposeful discrimination was clearly erroneous. *Id.* Whether a prosecutor's reasons for using peremptory challenges are race neutral is a question of law. *Id.* A trial court's determination that the prosecutor's race-neutral explanation should be believed, on the other hand, frequently involves evaluation of a prosecutor's credibility, which requires deference to the court's findings absent exceptional circumstances. *Id.*

In this case, Briggs contends that the State did not offer a race-neutral reason for excluding two jurors who were racial minorities and that even if the State did offer race-neutral reasons for the strikes, such reasons were not genuine but pretextual. In fact, the State clearly did offer race-neutral reasons for striking the jurors at issue. The first of these prospective jurors was a doctor who had indicated that because of scheduling issues, a clinic with which she was associated would have to close if she were selected as a juror. The State said it struck the juror for this reason. As a reason for striking the second juror at issue, the State pointed to his statements that he was going to be taking his daughter to graduate school in Oregon during the time trial was scheduled and that if selected as a juror, he would have to change his plans and "wouldn't be happy about that at all."

[22] In determining whether a prosecutor's explanation for using a peremptory challenge is race neutral, a court is not required to reject an explanation because it is not persuasive, or even plausible; it is sufficient if the reason is not inherently discriminatory. *Clifton, supra*. The reasons the State offered were not inherently discriminatory.

[23] We also reject Briggs' claim that the reasons offered by the State were pretextual. The sole argument Briggs makes in support of this claim is that these jurors stated during voir dire that they could be fair and impartial. But in making this argument, Briggs appears to misunderstand our inquiry. The

State can exercise peremptory strikes on jurors for reasons other than a belief that the juror will not be fair and impartial. Indeed, "[a] prosecutor's intuitive assumptions, inarticulable factors, or even hunches can be proper bases for rejecting a potential juror, so long as the reasons are not based on impermissible group bias." *Clifton*, 296 Neb. at 153, 892 N.W.2d at 129. We do not understand how the fact that these jurors stated they could be fair and impartial shows that the prosecutor's stated reasons for striking them from the jury were a pretext for discrimination. As there is no basis to find that the district court clearly erred in finding that the State's race-neutral explanations were pretextual, Briggs' claim under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), fails.

### Denial of Briggs' Motion to Dismiss.

[24] Briggs next asserts that the district court erred by denying the motion to dismiss he made at the close of the State's case. The record, however, shows that after the State rested and Briggs' motion was denied, Briggs put on evidence of his own. A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict but may still challenge the sufficiency of the evidence. *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016).

By introducing evidence after the denial of his motion to dismiss, Briggs waived the right to challenge the district court's ruling on appeal.

### Briggs' Motions for Mistrial.

Briggs also claims the district court erred by denying his motions for a mistrial. Briggs asked the district court to grant a mistrial after the admission of testimony from Heidt that

Briggs moved in with her after he was released from jail. He also argued a mistrial was warranted after the trial court admitted evidence of a telephone call between Briggs and Heidt that took place while Briggs was incarcerated. We cannot say the district court abused its discretion in denying Briggs' requests for a mistrial.

[25] A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017). The defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *Id.*

[26] Briggs claims that evidence he was previously incarcerated was prejudicial and warranted a mistrial. After Heidt made reference to Briggs' previous incarceration, however, the district court gave an instruction ordering the jury to disregard the reference to Briggs' being in jail. Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material. *McCurry, supra*. Neither do we believe this is an extraordinary case in which a trial court's admonishment is insufficient to overcome potential prejudice. The jury was already aware that Briggs had a criminal history; he had stipulated that he had a prior felony conviction, and this stipulation was read to the jury at the start of the trial. It would not have come as a shock to any juror that Briggs had spent some time incarcerated.

Briggs fares no better with his argument that he was entitled to a mistrial based on the admission of the recorded telephone call between Briggs and Heidt. In the call, which occurred before Longo's death, Briggs asked Heidt whether Longo was holding money. After being told she was not, Briggs asked Heidt to bring the money to bond him out of jail. The call was thus relevant to the question of whether Briggs was benefiting

from Longo's acts of prostitution. Briggs cannot even show that evidence of the call was improperly admitted, let alone that its admission entitled him to a mistrial. This assignment of error is without merit.

*Motion for New Trial.*

Briggs claims that the district court should have granted his motion for new trial for various reasons. Most of these reasons can be dispensed with quickly, but the final reason requires more discussion.

With respect to Briggs' claim that the circumstances under which he had the opportunity to depose Jandreau and another witness were unfair, we find that the district court was not obligated to grant a new trial. Briggs complains that these witnesses were granted immunity during the trial and that as a result, he was forced to take their depositions during recesses. Briggs, however, did not ask for a continuance to give him more time to take either deposition. Neither has Briggs shown how he was prejudiced by the timing of these depositions.

Next, Briggs claims that he was entitled to a new trial based on various issues we have already discussed. Briggs says he was denied a fair trial as a result of the admission of evidence regarding the pandering of Heidt and the recorded telephone call between Briggs and Heidt. Briggs also complains about Heidt's stricken statement that Briggs moved in with her after he was released from jail. As we have already explained, we do not find that Briggs was prejudiced by any of the foregoing. Neither do we believe Briggs has identified cumulative error that would entitle him to a new trial.

This brings us to the motion for new trial argument that requires additional discussion. Here, Briggs argues that the district court should have given him a new trial because he did not commit an intentional felony that would support his conviction for use of a deadly weapon to commit a felony. In support of this argument, Briggs points out that this court has interpreted Neb. Rev. Stat. § 28-1205(1) (Reissue 2016), the

use of a deadly weapon to commit a felony statute, to provide that a person cannot be convicted thereunder when the underlying felony is an unintentional crime. See, *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002); *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989), *disapproved on other grounds, State v. Irish*, 292 Neb. 513, 873 N.W.2d 161 (2016). As we explained in *Ring*, 233 Neb. at 724, 447 N.W.2d at 911, § 28-1205(1) makes it a crime to use certain weapons "'to commit any felony'" and this is synonymous with "'for the purpose of committing any felony.'" Briggs contends that he did not commit an intentional crime that would support his conviction for use of a deadly weapon to commit a felony.

The State does not contest Briggs' reading of *Pruett* or *Ring*, but contends that Briggs did commit an intentional crime that could serve as the predicate offense for his use of a deadly weapon to commit a felony conviction. The State notes that the jury was instructed to find Briggs guilty of manslaughter if it concluded he killed Longo either intentionally without malice upon a sudden quarrel or unintentionally while in the commission of an unlawful act, and the instructions defined as an unlawful act "Assault in the First Degree, that is, the act of intentionally or knowingly causing serious bodily injury to another person." The State argues that either sudden quarrel manslaughter or first degree assault is an intentional crime and can serve as the basis for a use of a deadly weapon to commit a felony conviction.

[27] We have previously held that first degree assault requires the intent to perform the act which produces the injury and that, because of this intent requirement, first degree assault can serve as the predicate offense of use of a deadly weapon to commit a felony. See, *State v. Sepulveda*, 278 Neb. 972, 775 N.W.2d 40 (2009); *State v. Tucker*, 278 Neb. 935, 774 N.W.2d 753 (2009). In both *Sepulveda* and *Tucker*, the defendants were convicted of manslaughter and use of a deadly weapon to commit a felony. And, in both cases, we upheld a use of a weapon conviction on the ground that

intentional assault could form the basis for the unintentional manslaughter conviction and the predicate for the use of a weapon charge.

Faced with the fact that first degree assault could serve as a predicate for the use of a weapon charge, Briggs responds that there was insufficient evidence he committed first degree assault and, in the alternative, that a finding he committed first degree assault cannot be reconciled with the jury's decision not to convict him of first or second degree murder. We take up these arguments in turn.

[28] First, we reject Briggs' argument that there was insufficient evidence of first degree assault. When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Stubbendieck*, 302 Neb. 702, 924 N.W.2d 711 (2019).

Viewing the evidence under this deferential standard, we find there was sufficient evidence that Briggs committed first degree assault. Neb. Rev. Stat. § 28-308(1) (Reissue 2016) provides that one commits first degree assault when one "intentionally or knowingly causes serious bodily injury to another person." The evidence showed that Longo was last seen alive leaving with Briggs on September 17, 2015; that she was later found to have been killed as a result of a close-range shotgun wound to the head; that Briggs washed his clothes and traveled to a creek where he appeared to dispose of an object in the early morning hours of September 17; and that Briggs admitted to Jandreau that he had shot Longo. While Briggs told Jandreau that he had shot Longo accidentally, the jury was not obligated to believe his testimony on that point. Viewing this evidence in the light most favorable to the prosecution, we believe the jury could have rationally found that Briggs intentionally caused serious bodily injury to Longo by shooting her in the head.

This leaves Briggs' argument that a determination that he committed first degree assault is inconsistent with the jury's decision not to convict him of first or second degree murder. This argument has some surface appeal. The facts we recounted above upon which the jury could rationally have convicted Briggs of first degree assault would also seem to support a finding of first or at least second degree murder. And yet, as Briggs points out, the jury, despite being instructed on the elements of those offenses, convicted him of manslaughter instead. Accordingly, Briggs argues that a finding he committed first degree assault is inconsistent with the jury's decision not to convict him of first or second degree murder and that therefore, the use of a weapon conviction cannot stand.

But while Briggs' argument may have surface appeal, it is not legally viable. Briggs is asking us to overturn a conviction on one charge because he contends it is inconsistent with a jury's decision not to convict on another. The U.S. Supreme Court has held that a conviction cannot be overturned because of this type of inconsistency. The Supreme Court first reached that conclusion in *Dunn v. United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932), and reaffirmed the principle over 50 years later in *U.S. v. Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984).

In *Powell*, the inconsistency in the verdict was more apparent than in this case. The defendant was acquitted of possession with intent to distribute cocaine and conspiracy to commit the same but was convicted of several counts of using a telephone in committing those same drug-possession offenses. Even so, the U.S. Supreme Court held that the defendant could not challenge the convictions on the ground they were inconsistent with the acquittals on other counts.

As the Court explained, this type of inconsistent verdict should not necessarily be interpreted "as a windfall to the Government at the defendant's expense," because it is just as possible that the jury reached a proper conclusion on the

conviction and arrived at an inconsistent conclusion on the acquittal through "mistake, compromise, or lenity." *Id.*, 469 U.S. at 65. Given the uncertainty of the cause of the inconsistent verdict and the fact that the prosecution cannot challenge the acquittal, the Court held that a conviction cannot be overturned because it is inconsistent with the jury's decision not to convict on another count. Finally, the Court emphasized that protection against jury irrationality or error is available in the form of sufficiency of the evidence review, but that this review is "independent of the jury's determination that evidence on another count was insufficient." *Id.*, 469 U.S. at 67.

While a minority of state courts have declined to follow the rule adopted in *Dunn* and *Powell*, on state law grounds, see, e.g., *State v. Halstead*, 791 N.W.2d 805 (Iowa 2010) (collecting cases), we find the federal rule adopted in *Dunn*, reaffirmed in *Powell*, and followed by a majority of states to be sound. We also note that the Nebraska Court of Appeals, in reliance on *Dunn* and *Powell*, refused to overturn a conviction on the ground that it was inconsistent with the jury's decision to acquit on another count. See *State v. McBride*, 19 Neb. App. 277, 804 N.W.2d 813 (2011). Instead, consistently with *Powell*, the Court of Appeals determined there was sufficient evidence to support the conviction without regard to the acquittal on the other charge. We have performed the same analysis here and determined there was sufficient evidence to support the conviction for use of a weapon to commit a felony.

Because we find that Briggs cannot challenge his use of a weapon conviction on the ground that it is inconsistent with the jury's decision not to convict him of first or second degree murder, and because we find that there was sufficient evidence to support the use of a weapon conviction, Briggs is not entitled to a new trial on this basis.

*Plain Error in Sentencing.*

[29] Briggs' final two assignments of error pertain to his sentences. Before addressing those issues, we will consider

the State's contention that there was plain error in the sentences given by the district court. Plain error may be found on appeal when an error unasserted or uncomplained of at trial is plainly evident from the record, affects a litigant's substantial right, and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Samayoa*, 292 Neb. 334, 873 N.W.2d 449 (2015). We agree that the sentences imposed constitute plain error in some respects, as we explain below.

The district court imposed determinate sentences of 20 years' imprisonment for manslaughter and 10 years' imprisonment for possession of a deadly weapon by a prohibited person. Both crimes were alleged to have been committed after the effective date of changes made by 2015 Neb. Laws, L.B. 605, that resulted in the version of Neb. Rev. Stat. § 29-2204 (Supp. 2015) that would have been in place at the time. Accordingly, Briggs' sentences on these charges were governed by that version of § 29-2204, which provided:

> (1) Except when the defendant is found guilty of a Class IA felony, in imposing a sentence upon an offender for any class of felony other than a Class III, IIIA, or IV felony, the court shall fix the minimum and the maximum terms of the sentence to be served within the limits provided by law. The maximum term shall not be greater than the maximum limit provided by law, and:
>
> (a) The minimum term fixed by the court shall be any term of years less than the maximum term imposed by the court; or
>
> (b) The minimum term shall be the minimum limit provided by law.

[30] Because manslaughter is a Class IIA felony and possession of a deadly weapon by a prohibited person is a Class ID felony, the above-quoted portion of § 29-2204 governed the sentences that should have been imposed. This language obligated the district court to impose indeterminate sentences

for these convictions. See *State v. Thompson*, 301 Neb. 472, 919 N.W.2d 122 (2018). As we have recently explained, an indeterminate sentence is ordinarily articulated as either a minimum and maximum term or a range of time for which a defendant is to be incarcerated, as opposed to a determinate sentence, which is when a defendant is sentenced to a single term of years. *Id.* Here, the district court imposed determinate sentences for Briggs' convictions of manslaughter and possession of a deadly weapon by a prohibited person. We have previously found that the failure to impose an indeterminate sentence when required by statute constitutes plain error. *Id.* Given this plain error, we vacate Briggs' sentences for his convictions of manslaughter and possession of a deadly weapon by a prohibited person and remand those counts for resentencing.

[31] We note another instance of plain error in the district court's award of a credit for time served of 794 days at the time of Briggs' sentencing on his plea-based pandering conviction. This followed the district court's award of 764 days of credit for time served for his sentences on the other charges. The district court awarded additional credit for time served because Briggs was incarcerated during the time period between his respective sentencing hearings. But the second award of credit for time served constituted plain error. While Briggs was entitled to credit for time served prior to his initial sentencing in October 2017, he was not entitled to additional credit after that sentencing. After Briggs was sentenced in October 2017, he began serving his sentences on the offenses of which he was convicted at trial. We have held that a defendant is not entitled to credit for time served when he or she is awaiting trial and sentencing on charges, but is also serving another sentence. See *State v. Baker*, 250 Neb. 896, 553 N.W.2d 464 (1996). We thus vacate the district court's award of 794 days' credit for time served and leave in place its initial award of 764 days' credit for time served.

*Habitual Criminal Determination.*

Returning to Briggs' assignments of error related to sentencing, Briggs asserts that the district court erred by finding that he met the criteria of a habitual criminal under § 29-2221 and sentencing him accordingly.

Section 29-2221(1) provides:

Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be a habitual criminal . . . .

As part of its attempt to show that Briggs qualified as a habitual criminal, the State submitted evidence of three prior convictions. One of the prior convictions upon which the State relied was a conviction of third degree domestic assault, second offense, involving the same victim. The offense was a Class IV felony for which Briggs was sentenced to a term of 1 to 1 year's imprisonment. Briggs contends that because this offense was under a specific subsequent offense statute, it would be an impermissible "'double penalty enhancement'" to treat this offense as a prior conviction under the habitual criminal statute. Brief for appellant at 46.

[32] Briggs' argument is foreclosed by our opinion in *State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016). In that case, we distinguished between triggering convictions and prior convictions under the statute. We explained that a triggering offense is the "offense for which the defendant is currently being sentenced" and a prior offense is "one of the offenses that establishes that the defendant was a habitual criminal at the time he or she committed the triggering offense." *Id.* at 710-11, 879 N.W.2d at 701. We then observed that the habitual criminal statute does not enhance the penalty for prior convictions, but is applied to the penalty for the triggering offense, and that thus, the fact the penalty for a prior

conviction was itself enhanced does not result in a double penalty enhancement of the triggering offense. *Id.* Instead, even convictions that are enhanced under a specific subsequent offense statute can be used as prior convictions so long as they meet the statutory requirement that such convictions resulted in terms of imprisonment of not less than 1 year. *Id.* Briggs' third degree domestic assault, second offense, conviction meets that criteria.

As noted above, the State submitted evidence of three prior convictions. Briggs contends two of those convictions cannot be used as prior convictions for habitual criminal purposes, but apparently concedes that one of the convictions can. The statute requires only two qualifying prior convictions. Having concluded that one of the convictions Briggs challenges qualified and given Briggs' concession that one of the other convictions also qualified, the district court did not err in classifying Briggs as a habitual criminal and we need not determine whether the third conviction qualified as a valid prior conviction under the statute.

*Excessive Sentences.*

Finally, Briggs argues that his sentences were excessive. Because we have vacated his sentences for manslaughter and possession of a deadly weapon by a prohibited person and remanded the matter for resentencing, we need only consider whether his other sentences were excessive. Each of these sentences was within the appropriate statutory range.

[33-35] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Tucker*, 301 Neb. 856, 920 N.W.2d 680 (2018). Relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background,

(5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Briggs concedes that the district court's sentences were within the statutory range, but argues that the district court nonetheless abused its discretion by not seriously considering mitigating factors. Briggs does not, however, actually identify what factors he considers mitigating. We see nothing in the record to suggest that the district court did not properly consider and apply the familiar sentencing factors, and we therefore reject this assignment of error.

## CONCLUSION

We find that Briggs' assignments of error are without merit and affirm his convictions. However, we find plain error in his sentencing and therefore vacate his sentences for manslaughter and possession of a deadly weapon by a prohibited person and remand the matter for resentencing for those offenses in accordance with this opinion. We also vacate the district court's award of 794 days' credit for time served.

Judgment in No. S-17-1183 affirmed in part, and in part vacated and remanded for resentencing.
Judgment in No. S-17-1321 affirmed in part, and in part vacated.