IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. LAFAVE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

HALEIGH J. LAFAVE, APPELLANT.

Filed March 24, 2026.    No. A-25-428.

Appeal from the District Court for Madison County: JAMES G. KUBE, Judge. Affirmed.

Bradley A. Ewalt, of Ewalt Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

MOORE, WELCH, and FREEMAN, Judges.

MOORE, Judge.

## INTRODUCTION

Following a jury trial in the district court for Madison County, Haleigh J. Lafave was convicted of one count of second degree assault. Lafave appeals, assigning error to the court's overruling of her challenge to the State's peremptory strike of a prospective juror under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). For the reasons stated herein, we affirm.

## STATEMENT OF FACTS

On October 17, 2024, the State filed an information in the district court, charging Lafave with second degree assault, a Class IIA felony. A subsequent amended information added a second charge of robbery, a Class II felony.

- 1 -

A jury trial was held on March 10 and 11, 2025. Lafave represented herself at trial, supported by standby counsel. After the jury was impaneled and sworn in, the district court took a brief recess to allow jurors to contact their families and places of employment.

Outside the presence of the jury, Lafave's standby counsel noted that Lafave had a *Batson* challenge, which he would be handling for her. Lafave's standby counsel noted Lafave's objection to the State's strike of the only non-white member of the jury panel as being in violation of *Batson v. Kentucky, supra*. Her standby counsel argued, "[G]iven that . . . Lafave is African American herself, having the only person that was on the entire panel who was not White stricken, appears at least from our perspective to be due to racial bias."

In response, the prosecutor explained his process of evaluating prospective jurors during voir dire. The district court received the prosecutor's notes and a copy of the sheet where Lafave and the prosecutor marked their strikes, which showed that the prospective juror in question was the State's last peremptory strike. The prosecutor noted that other than one prospective juror who was "a victim," "essentially all of [his] strikes were made from [his] first impression." He noted that he was looking for jurors that he "saw as leaders coming up . . . people that had businesses, those types of things, made decisions." At the start of voir dire, the court asked each prospective juror to respond with their name, where they were from, and what they did for a living when called to the jury box. The prospective juror in question stated that she was "a caretaker." The court inquired, "Caretaker?" to which she responded, "Uh-huh." Neither the court, any of the attorneys, nor Lafave asked any further questions of this prospective juror during voir dire. During the *Batson* hearing, the prosecutor explained further that he struck the prospective juror because she "appeared indecisive," he "saw her as a follower, she "didn't speak up loud" or "look at people," and he "didn't see her as decisive." He also noted that she was chewing gum, which was to him "a big thing." The prosecutor concluded by stating, "[S]he was my number six, I was running out of strikes without striking out. The way it worked I wanted to, and I did, I believe, got all strong jurors and she was one of the ones I had a question mark from the very first."

The district court took a brief recess to review Lafave's *Batson* challenge before making its ruling from the bench, still outside the presence of the jury. Based on the statements of Lafave's standby counsel, the court found "an inference that the discrimination has occurred." The court then reviewed the prosecutor's reasons for striking the prospective juror, stating:

> In his explanation of why he struck [the prospective jury] he indicated a couple of race-neutral bases. One was that she was a gum chewer, which I don't necessarily think is a real persuasive explanation for striking anyone, but he did indicate that that was one of the bases that he chose her. He also indicated that because she spoke quietly and didn't answer any questions that this led him to believe that she was more of a follower instead of a leader.
>
> I have had other juries with [the prosecutor] previously. I am aware that in selecting a jury he does look for people who are more leaders and who are willing to step up, so to speak, when there is pressure in a jury or in a jury room to express one's opinions.
>
> . . . also [the prosecutor] indicated that [the prospective juror] was actually his sixth selection to be stricken, which from [the strike sheet] does indicate that [she] was the sixth juror that was stricken. In other words, I find that persuasive because it wasn't like he was

jumping to get her off as soon as possible because that was the most important thing is to get another African American person off the Jury.

And I do take into account that even though she didn't really say anything and there was no real basis in her answers to strike her that there were a lot of people on this jury panel who did not raise their hands, who did not say anything. And really when that happens, both parties are left with maybe not a whole lot of real good reasons to strike someone, but they have to be stricken and so you just strike, I understand that. I've practiced law before, I have been in that situation and sometimes you don't even know who you're striking and you may strike someone that would really be beneficial for your case and you just don't know because the voir dire of the panel didn't bring up issues that were important to you.

However, based on what has been provided to me, I'm going to rule that the [*Batson*] challenge has been overcome by virtue of the statements of the prosecutor in this case. I think there are raised mutual [sic] reasons for the State's decision and, therefore, I'm going to overrule the challenge based on [*Batson*] at this point.

At trial, the State presented testimony from multiple witnesses, including the victim and police officers who investigated the incident that led to the charges in this case. The district court received exhibits offered by the parties, including the pieces of a broken knife, various photographs of the scene and the victim's wounds, and security video footage depicting certain actions by Lafave before and after the incident. Lafave testified on her own behalf.

The trial evidence showed that Lafave and the victim were roommates in an apartment. About 2 days before the incident, the victim made a complaint about Lafave, which was relayed to Lafave by a manager at the apartment building. On the morning of August 22, 2024, the victim was outside walking her dog, when Lafave approached and said "'I'm sorry I have to do this.'" When the victim asked, "Do what," Lafave responded, "I have to kill you." Lafave then "swiped at" and "slash[ed]" the victim with a knife, contacting the victim's arm. At that point, the victim dropped her cell phone. According to the victim, Lafave "proceeded to come at [her] with the knife," they "struggled with it," the victim grabbed the blade which ended up "snapping off the handle," and Lafave "proceeded to try and shove [the blade] into [the victim's] chest." The victim remembered yelling "'Help'" repeatedly. After a bystander "yelled something," the victim was able to "get away." The victim then went to a friend's apartment, where she waited for the police. Lafave left the scene with the victim's phone and the broken knife, which she hid in an "ashtray" near the apartment building where Lafave and the victim lived. The victim suffered lacerations to her hand and upper arm.

In her testimony, Lafave admitted approaching the victim with a knife and swinging or swiping it at the victim. However, Lafave denied injuring the victim's arm. Lafave also admitted taking the cell phone the victim dropped and hiding the knife after the incident.

The jury found Lafave guilty of second degree assault and not guilty of robbery. The district court accepted the jury's verdict and entered judgment accordingly.

Following a sentencing hearing on May 22, 2025, the district court sentenced Lafave to imprisonment for a term of 9 to 12 years with credit for 274 days of time served.

Lafave now appeals.

ASSIGNMENT OF ERROR

Lafave assigns that the district court erred in overruling her *Batson* challenge.

STANDARD OF REVIEW

An appellate court reviews de novo the facial validity of an attorney's race-neutral explanation for using a peremptory challenge as a question of law. *State v. Ramos*, 319 Neb. 511, 23 N.W.3d 640 (2025), *cert. denied* No. 25-6257, 2026 WL 79786 (U.S. Jan. 12, 2026). It reviews for clear error a trial court's factual determination regarding whether a prosecutor's race-neutral explanation is persuasive and whether the prosecutor's use of a peremptory challenge was purposefully discriminatory. *Id.*

ANALYSIS

Lafave assigns that the district court erred in overruling her *Batson* challenge. She argues that the prosecutor's reasons for striking the only African American individual from the jury were not persuasive and that the strike was pretextual.

Determining whether a prosecutor impermissibly struck a prospective juror based on race is a three-step process. *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019). In this three-step process, the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. *Id.* First, a defendant must make a prima facie showing that the prosecutor exercised a peremptory challenge because of race. *Id.* Second, assuming the defendant made such a showing, the prosecutor must offer a race-neutral basis for striking the juror. *Id.* And third, the trial court must determine whether the defendant has carried his or her burden of proving purposeful discrimination. *Id.*

Once the trial court has decided the ultimate question of intentional discrimination in a prosecutor's strike of a prospective juror, the questions on appeal are only whether the prosecutor's reasons were facially race neutral and whether the trial court's final determination regarding purposeful discrimination was clearly erroneous. *Id.* Whether a prosecutor's reasons for using peremptory challenges are race neutral is a question of law. *Id.* A trial court's determination that the prosecutor's race-neutral explanation should be believed, on the other hand, frequently involves evaluation of a prosecutor's credibility, which requires deference to the court's findings absent exceptional circumstances. *Id.*

Here, the State offered race-neutral reasons for striking the prospective juror in question. The prospective juror did not raise her hand in response to any questions asked during voir dire; the only time she spoke was during the introductions, when she gave her name, stated where she was from, and identified herself as a caretaker. The prosecutor explained that in his notes, he writes "plus, minus, question mark" when prospective jurors introduce themselves and that he initially marked this individual with a question mark and noted that she was a gum chewer. He also stated that he struck the prospective juror because she was "quiet," "appeared indecisive," and he viewed her as a "follower."

In determining whether a prosecutor's explanation for using a peremptory challenge is race neutral, a court is not required to reject an explanation because it is not persuasive, or even plausible; it is sufficient if the reason is not inherently discriminatory. *Id.* The State's reasons for striking the prospective juror were not inherently discriminatory.

Lafave also claims that the reasons offered by the State were pretextual. She argues that the prosecutor had no basis for thinking the prospective juror was indecisive because she was not asked any direct questions during voir dire. Lafave also notes the prosecutor did not strike all the jurors he marked with question marks or minus signs, arguing that it would have been more logical for the prosecutor to strike another juror marked with a minus sign before striking the juror in question. Lafave also points to the "gum chewer" notation the prosecutor made in his notes about the prospective juror and argues that the prospective juror was "singled out" because the prosecutor did not make any similar notations about any of the other prospective jurors.

In considering whether the district court clearly erred in finding that the prosecutor's race-neutral explanation for the peremptory strike was genuine and not pretextual, we may consider the rationality of the prosecutor's reason in our inquiry. See *State v. Wofford*, 298 Neb. 412, 904 N.W.2d 649 (2017). A prosecutor's intuitive assumptions, inarticulable factors, or even hunches can be proper bases for rejecting a prospective juror, so long as the reasons are not based on impermissible group bias. See *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019). During the *Batson* hearing, the prosecutor noted that he wanted "strong jurors" and that the stricken juror was "one of the ones [he] had a question mark from the very first." In its analysis, the court noted its awareness that in jury selection, the prosecutor "does look for people who are more leaders and who are willing to step up, so to speak, when there is pressure in a jury or in a jury room to express one's opinions." The court made a credibility determination about the prosecutor's explanation for striking the prospective juror, and we defer to that finding. The record does not demonstrate any exceptional circumstances which would cause us to do otherwise. See *id*.

The district court did not clearly err when it found that the prosecutor's race-neutral explanation for striking the prospective juror in question was valid and that the use of the peremptory challenge was not purposefully discriminatory. As such, Lafave did not meet her burden of proving purposeful discrimination by the State in striking the prospective juror. Lafave's assignment of error fails.

## CONCLUSION

The district court did not err in overruling Lafave's *Batson* challenge. Lafave does not assign error to any other aspect of her conviction and sentence. Accordingly, we affirm.

AFFIRMED.