IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BRITT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TIMOTHY J. BRITT, APPELLANT.

Filed May 26, 2020.    No. A-19-531.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Gregory A. Pivovar for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Following a jury trial, Timothy J. Britt was convicted of one of two counts of third degree assault on a corrections officer; he was found not guilty of the other count. The Douglas County District Court subsequently determined that Britt was a habitual criminal and sentenced him to 40 to 45 years' imprisonment. In this direct appeal, Britt argues the district court erred by overruling his motions to sever and for directed verdict, and by imposing an excessive sentence; he also claims his trial counsel was ineffective in several ways. We affirm.

## II. BACKGROUND

The State filed an information on May 10, 2016, and amended informations on June 27 and November 8, charging Britt with two counts of third degree assault on an officer, emergency responder, or health care professional, each a Class IIIA felony, pursuant to Neb. Rev. Stat.

- 1 -

§ 28-931 (Reissue 2016). As amended, Britt was alleged in count I to have assaulted John McNeil on June 19, 2013, and in count II to have assaulted Daniel Widman on September 7. The State also alleged that Britt was a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2016).

On November 7, 2016, Britt filed a motion to sever the two counts. After a brief hearing, the district court denied Britt's motion, and the matter proceeded to trial that same day.

A jury trial was held on November 7 and 8, 2016. After the jury was selected and sworn in, but before opening statements were given, Britt renewed his motion to sever; his motion was denied. The parties stipulated that on June 19 and September 7, 2013, Britt was lawfully in custody at Douglas County Corrections (DCC) and he was being monitored and supervised by employee officers of DCC engaged in performing their official duties on both respective dates. A summary of the relevant evidence from trial follows.

McNeil testified that he is a DCC officer. On June 19, 2013, he was on duty working in the cell housing unit where Britt was housed. At approximately 9 p.m., McNeil observed Britt sitting at the end of a table without a shirt on, which was against the rules. McNeil repeatedly asked Britt to put a shirt on, but Britt refused. McNeil told Britt to gather his belongings so he could be "locked down" in another unit per DCC procedure. McNeil then called his supervisor and told him he "had one going to lockdown." McNeil subsequently received a phone call stating that Britt was to be locked down inside his own unit, and that Britt's cellmate would be moved to a different location. McNeil went to Britt's cell to inform Britt and his cellmate about what was going to happen. McNeil stated that Britt "came out asking to talk to the sergeant" and "he kind of tried to like push through me through the door." McNeil told Britt to stay in the room, and Britt went back into his cell, sat on his bunk, and "started rummaging through stuff." Next, Britt tried "pushing past" McNeil again, and wanted to talk to a sergeant. When McNeil put his arm up and told Britt that he was not going to talk to a sergeant, "that's when [Britt's] right hand came up towards [McNeil]"; McNeil believed Britt's hand hit his (McNeil's) arm. McNeil stated, "I hit the ground on my back right after that," and then Britt "tr[ied] to mount on top of me to start throwing blows down on top of me." McNeil was able to get ahold of Britt's head, "spin him around," and put him in a headlock until help arrived. Once the other officers arrived and got Britt under control, McNeil saw that Britt had socks wrapped around his hands. As a result of the incident, McNeil had pain, a scratch on his elbow, and he was bleeding from his neck. According to McNeil, the incident was reported to the Douglas County sheriff's office the next day. Angela Olson testified that she was the crime scene investigator from the Douglas County sheriff's office that went to DCC and photographed McNeil's injuries on June 20; the photographs were received into evidence. On cross-examination, McNeil acknowledged that the only punch he recalled was the one where Britt hit his elbow.

Widman testified that he is a DCC officer. On September 7, 2013, he was on duty working in the housing unit where Britt was housed. At approximately 9 p.m., he was doing his rounds for the unit and Britt asked for cleaning supplies. Widman got the supplies and took them to Britt's room. Widman stated, "[Britt] got up off his bunk and punched me in the face"; "they were closed fists strikes to my face." Widman had pain in his face and had blood running down his face. Widman's secondary officer stepped in and Britt was secured in his room. Widman was treated by the jail nurse and then went to the hospital where he was diagnosed with a broken nose and a deviated septum. He later saw an ear, nose, and throat specialist and had to have surgery.

Clinton Skanes is a corporal with DCC. According to his testimony, Skanes and Widman were working in Britt's housing unit on September 7, 2013. Skanes said that around 9 p.m., Widman went to give cleaning products to Britt, and Britt "attacked" Widman. Skanes observed Britt attack Widman "with closed fists towards his face multiple times." Skanes called for assistance and then went over and pulled Britt away from Widman and secured Britt in his room. Skanes observed blood dripping down Widman's face and onto the floor, and Widman's nose appeared to be broken.

Ernest Black was a supervisor on duty at DCC on September 7, 2013. According to his testimony, at approximately 9 p.m., Black responded to a "code blue" in Britt's housing unit. When Black arrived, he observed Widman with a bloody nose that appeared to be broken. Widman reported being assaulted by Britt. Black escorted Widman to medical and then returned to the housing unit. Black spoke with Britt and asked if he needed medical attention; Britt responded in the affirmative stating he had a cut on his hand. Once Britt was in restraints, Black asked Britt what happened. According to Black, Britt said the officer had an attitude problem, but Britt would not comment on how the altercation started.

Debora Dellutri was a nurse in the DCC infirmary on September 7, 2013. She testified that Widman was brought into the infirmary that evening "bleeding profusely from his nose and spitting out blood." Dellutri treated Widman and then sent him to the hospital for facial x rays and a possible CT for a head injury. Dellutri also examined Britt that evening, and cleaned a gash on his right hand.

Dr. Amy Cutright is an emergency physician in the Emergency Medical Department at Nebraska Medicine. Dr. Cutright was on duty on September 7, 2013. She testified that she examined Widman that night and he had swelling over the nose, bruising around both of his eyes, and bleeding from the left side of his nose. Dr. Cutright said that a CT scan confirmed a nose bridge fracture, which "means that his nose bone was broken in several pieces and that several of the pieces had moved from their original orientation."

Mandy Reinart, a deputy with the Douglas County sheriff's office, testified that shortly after 9 p.m. on September 7, 2013, she responded to a call regarding an assault on a DCC officer. She initially went to the emergency room and met Widman to assess his injuries. After gathering information from Widman, Deputy Reinart went to DCC to gather information; she also had contact with Britt. Deputy Reinart had a crime scene investigator with her that took photographs of the scene and of Britt's face and hands; the photographs were received into evidence. Deputy Reinart observed a small cut on the knuckle of Britt's pinky finger.

Leonard Corbett was a sergeant on duty at DCC on September 8, 2013. At approximately 11 p.m. he went into Britt's room to take down window coverings after Britt refused to take them down. Corbett testified that Britt said, "'[W]hy don't you take everyone else's stuff not just mine. You're just mad because one of your boys got his ass kicked last night by me. And you could be next. We old score [sic] here.'"

After the State rested its case, Britt moved to dismiss "both counts, but more particularly Count 1 as it relate[d] to Correctional Officer McNeil," claiming there was insufficient evidence to go to the jury; his motion was overruled. Britt did not offer any evidence and rested his case.

On November 8, 2016, the jury found Britt guilty of count II, the third degree assault on DCC Officer Widman. However, the jury found Britt not guilty of count I, the third degree assault on DCC Officer McNeil. The district court entered judgment accordingly.

After a hearing on January 5, 2017, the district court concluded that Britt was a habitual criminal for purposes of his sentence on his November 8, 2016, conviction. The court then sentenced Britt to 40 to 45 years' imprisonment, with 626 days' credit for time served. The court's written orders were filed on January 6, 2017.

On March 15, 2017, Britt filed a pro se motion for postconviction relief alleging that his trial counsel failed to timely file a direct appeal. In an order filed on May 31, 2019, the district court granted Britt's motion and gave him 30 days to file a new direct appeal.

Britt timely filed his new direct appeal.

## III. ASSIGNMENTS OF ERROR

Britt assigns that (1) the trial court erred by overruling his motion to sever, (2) the trial court erred by failing to grant a directed verdict, (3) he received an excessive sentence, and (4) he received ineffective assistance of counsel.

## IV. STANDARD OF REVIEW

A denial of a motion to sever will not be reversed unless clear prejudice and an abuse of discretion are shown, and an appellate court will find such an abuse only where the denial caused the defendant substantial prejudice amounting to a miscarriage of justice. *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019).

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. MOTION TO SEVER

Britt claims that in 2013, the two counts of assault were charged by separate informations in the district court; he notes separate district court docket numbers and filing dates, with the charge from the McNeil incident being filed 1 month before the Widman incident even occurred. According to Britt, the State made no effort to consolidate those two matters for trial. He further claims that those two dockets were dismissed when Britt was given life sentences on some murder convictions, but that once the Supreme Court reversed his murder convictions and remanded them for new trial, the State refiled both assault charges in one information in May 2016. Britt contends the district court should have granted his motion to sever the two counts.

Regardless of how the two counts were originally charged in 2013, a defendant has no constitutional right to a separate trial on different charges. *State v. Briggs, supra*. Instead, Neb. Rev. Stat. § 29-2002 (Reissue 2016) controls the joinder or separation of charges for trial, and states in relevant part:

> (1) Two or more offenses may be charged in the same indictment, information, or complaint . . . if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
>
> . . . .
>
> (3) If it appears that a defendant or the state would be prejudiced by a joinder of offenses . . . for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires.

Under these provisions of § 29-2002, the question of whether offenses are properly joined involves a two-stage analysis. *State v. Briggs, supra*. First, a court must determine whether the offenses were sufficiently related to be joinable, and then it must determine whether an otherwise proper joinder was prejudicial to the defendant. *Id*.

Britt argues that the assault charges involving DCC Officers McNeil and Widman involved different dates and different witnesses, and that trial of the matters together would unfairly prejudice him "since the jury might figure that if he committed one of them he may have committed both of them." Brief for appellant at 20. See, also, *State v. Rocha*, 286 Neb. 256, 836 N.W.2d 774 (2013) (charges arise out of same act or transaction if so closely linked in time, place, and circumstance that complete account of one charge cannot be related without relating details of other charge; to be part of same act or transaction, must be substantially same facts; i.e., one charge cannot be proved without presenting evidence of other charge). Britt's argument only focuses on one part of § 29-2002(1)--whether the offenses were part of the same act or transaction.

However, offenses may be charged in the same information if they are of the same or similar character. To determine whether the charges joined for trial are of the same or similar character, an appellate court considers whether the underlying factual allegations supporting the separate charges are of the same or similar character. *State v. Knutson*, 288 Neb. 823, 852 N.W.2d

307 (2014). Here, both charges involved alleged violations of § 28-931, both named victims were DCC corrections officers, both incidents occurred while Britt was incarcerated at DCC, and both incidents occurred within a 3-month time span. We conclude that the charges were "of the same or similar character" and joinable under § 29-2002(1).

The next question is whether the otherwise proper joinder prejudiced Britt. A defendant opposing joinder of charges has the burden of proving prejudice. *State v. Knutson, supra*. See, also, *State v. Briggs, supra*. To carry that burden, a defendant must show compelling, specific, and actual prejudice from the court's refusal to grant the motion to sever. *State v. Briggs, supra*. Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that the defendant would have had in a severed trial. *Id.* Joined charges do not usually result in prejudice if the evidence is sufficiently simple and distinct for the jury to easily separate evidence of the charges during deliberations. *Id.*

In this case, we believe that the evidence was such that the jury could have easily separated evidence of the charges during deliberations. Furthermore, the record demonstrates that the jury did separately evaluate whether the State met its burden as to each charge. While it convicted Britt of the assault on DCC Officer Widman, it did not convict him of the assault on DCC Officer McNeil. Because Britt cannot show he was prejudiced by the denial of his motion to sever, this assignment of error fails.

## 2. DIRECTED VERDICT

Britt argues that the district court erred when it failed to grant a directed verdict because there was insufficient evidence to support a jury verdict as to the charges.

Britt was tried by a jury on two counts of third degree assault on an officer, emergency responder, or health care professional. After the State rested its case, Britt made a motion to dismiss "both counts, but more particularly Count 1 as it relate[d] to Correctional Officer McNeil." The court denied Britt's motion. Britt did not offer any evidence in his defense at trial. The jury found Britt guilty only on count II, the third degree assault on DCC Officer Widman.

Section 28-931 provides in relevant part:

(1) A person commits the offense of assault on an officer, an emergency responder, [or] a state correctional employee . . . in the third degree if:

(a) He or she intentionally, knowingly, or recklessly causes bodily injury:

(i) To a peace officer, a probation officer, a firefighter, an out-of-hospital emergency care provider, or an employee of the Department of Correctional Services[.]

. . . .

(b) The offense is committed while such officer, firefighter, out-of-hospital emergency care provider, or employee is engaged in the performance of his or her official duties . . . .

Britt claims there was a "lack of proof that [Britt] committed this assault [of Widman]," including a lack of video evidence. Brief for appellant at 23. However, Britt does acknowledge testimony from Widman that Britt "hit him." *Id.* While there is no video evidence, such was not required. There was substantial evidence supporting Britt's conviction, including the testimony of

numerous witnesses and photographic evidence. The testimony was that Britt punched DCC Officer Widman, causing injury to Widman's nose. And there is no question that Widman was engaged in the performance of his official duties on the date of the incident.

Whether the evidence presented by the State supports Britt's conviction was a matter for the finder of fact. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018). Viewing the evidence in the light most favorable to the State, we determine the record reflects sufficient evidence to sustain the conviction beyond a reasonable doubt. Therefore, the district court did not err in denying Britt's motion to dismiss and allowing the case to go to the jury.

### 3. EXCESSIVE SENTENCE

Initially we note that our bill of exceptions does not include the habitual criminal and sentencing hearing that took place on January 5, 2017, and Britt did not request such in his praecipe. Therefore, the only record we have related to Britt's sentence is the presentence investigation report (PSR) and the district court's January 6 habitual criminal and sentencing orders.

Britt was convicted of one count of third degree assault on a corrections officer, a Class IIIA felony, pursuant to § 28-931. At the time of Britt's offense in September 2013, a Class IIIA felony was punishable by up to 5 years' imprisonment, a $10,000 fine, or both. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). However, Britt was deemed to be a habitual criminal pursuant § 29-2221, and therefore on his current felony conviction he was to be sentenced to a mandatory minimum term of 10 years and a maximum term of not more than 60 years in prison. Britt was sentenced to 40 to 45 years' imprisonment, with 626 days of credit for time served. Thus, his sentence was within the statutory range.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Britt was 29 years old at the time of sentencing. According to the PSR, Britt was single, had a GED, and was unemployed due to his incarceration.

Britt's adult criminal history includes "Sexual Assault of a Juvenile - 1st Offense-IIIA Felony to Sexual Assault in the Third Degree-1 Misdemeanor" in 2003 for which he was sentenced to 1 year in jail; "PWID - Hazardous Drugs-II Felony to Possession of a Controlled Substance-IV Felony" in 2006 for which he was sentenced to 20 months' to 3 years' imprisonment; "Sex Offender Registration Act Violation" in 2008 for which he was sentenced to 60 days in jail; false information and destruction of property in 2008 for which he was sentenced to 30 days in jail on each offense; assault and battery and disorderly conduct in 2008 for which he was sentenced to 6 months in jail on each offense; "DV Assault in the Third Degree - 1st Offense" in 2009 for which he was sentenced to 1 year in jail; "Sex Offender Registration Act Violation-IV Felony to Misdemeanor" in 2009 for which he was sentenced to 180 days in jail; assault by a confined person

in 2009 for which he was sentenced to 1 to 1 year in prison; and possession of a controlled substance in 2011 for which he was sentenced to 162 days in jail. He also had various traffic and motor vehicle violations for which he received jail time or fines.

Additionally, Britt was convicted of three counts of first degree murder, three counts of use of a deadly weapon to commit a felony, and one count of possession of a deadly weapon by a prohibited person--all offenses occurred in 2012. In 2014, Britt was sentenced to life in prison for each murder conviction, 25 to 35 years' imprisonment for each use of a deadly weapon conviction, and 30 to 30 years' imprisonment for the possession by a prohibited person conviction. However, Britt's convictions were subsequently reversed and the matter remanded for new trial. See *State v. Britt*, 293 Neb. 381, 881 N.W.2d 818 (2016). Following a retrial, Britt was convicted of all charges and was sentenced in May 2018, using a habitual criminal enhancement, to consecutive sentences of life in prison for each of the three murder convictions, and 40 to 45 years' imprisonment on each of the other four convictions; his convictions and sentences were recently affirmed by the Nebraska Supreme Court. See *State v. Britt*, 305 Neb. 363, 940 N.W.2d 270 (2020).

As for his current offense, in September 2013 Britt assaulted a corrections officer and fractured the officer's nose.

The probation officer submitted the PSR in December 2016. According to the PSR, the probation officer sent an information worksheet to Britt, but it was not returned. Additionally, the probation officer "attempted to contact [Britt's] attorney . . . regarding his client wanting to complete a presentence investigation interview in this case," but the officer did not receive a response from Britt's counsel. The probation officer did not conduct an interview "due to [Britt] residing in Tecumseh and . . . currently serving a life sentence." No "Level of Service/Case Management Inventory" appears in the PSR. The probation officer did, however, include Britt's 2010 and 2014 classification studies from the Nebraska Department of Corrections and Britt's 2014 PSR; but noted that Britt declined his previous presentence interview in 2014. Of note, the 2010 classification study stated that Britt was serving a 1 to 1 year's sentence for assault by a confined person; Britt claimed the Correctional Officer "was being 'disrespectful' to him and he was told to 'lock down,'" Britt then "pushed by the officer en route to his cell and he believe[ed] the officer fell on purpose and claim[ed] he was assaulted."

In his brief, Britt acknowledges that his sentence was within the statutory limits, but claims it was "clearly excessive" for the charge and his record. Brief for appellant at 30. He argues that the district court was faced with a defendant who had won a retrial on a murder case, and faced with that knowledge, it sentenced Britt's current conviction "like a murder." *Id*. at 28. He further argues that he "is being sentenced to the maximum to hedge the bet on whether he will be convicted on retrial for a murder case." *Id*. at 30. However, as noted by the State, Britt's claim finds no support in the record. There is nothing in the court's sentencing order to support Britt's assertion, and the court's order is the only information available to us to show the court's reasoning for the sentence imposed. As noted previously, we do not have the bill of exceptions from the sentencing hearing because Britt did not request it in his praecipe. It is incumbent upon an appellant to supply a record which supports his or her appeal. *State v. Boche*, 294 Neb. 912, 885 N.W.2d 523 (2016). Absent such a record, as a general rule, the decision of the lower court as to those errors is to be affirmed. *Id*.

Having considered the relevant sentencing factors in this case, we find that Britt's sentence was not excessive or an abuse of discretion and his sentence is therefore affirmed. See *State v. Lierman, supra* (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court).

### 4. Ineffective Assistance of Counsel

Britt has different counsel on direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). The determining factor is whether the record is sufficient to adequately review the question. *Id*. An ineffective assistance of counsel claim will not be resolved on direct appeal if it requires an evidentiary hearing. *Id*. Such a claim may be resolved when the record on direct appeal is sufficient to either affirmatively prove or rebut the merits of the claim. *State v. Hood*, 301 Neb. 207, 917 N.W.2d 880 (2018).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Weathers, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *Id*.

Britt claims that his trial counsel untimely filed the motion to sever and failed to preserve the motion to sever, and that counsel's concession of one charge was not a reasonable trial strategy.

### (a) Motion to Sever

Britt's claim that trial counsel failed to preserve the motion to sever prior to the receipt of testimony is refuted by the record. After the jury was selected and sworn in, but before opening statements were given, Britt's counsel renewed the motion to sever; but the motion was denied.

Moreover, any claim of ineffective assistance based on trial counsel untimely filing the motion to sever or failing to preserve the motion fails because Britt cannot show prejudice. We previously concluded that the two charges were "of the same or similar character" and joinable under § 29-2002(1), and that Britt could not show prejudice in the denial of his motion to sever. For the same reasons, his ineffective assistance of counsel claims related to the motion to sever must also fail.

### (b) Trial Strategy

Britt claims his trial counsel's decision to concede count II, the assault of DCC Officer Widman, was not a reasonable trial strategy. During closing arguments, trial counsel said he was "basically conceding the fact [Britt] did what the State said he did, in looking at the evidence, it seems like Mr. Britt punched Widman in the nose and he broke it." Counsel continued, "That speaks for itself. But so does the evidence or lack thereof as to McNeil." Counsel's closing argument was essentially that the State had not met its burden of proof regarding the alleged assault on McNeil. However, Britt cannot show that he was prejudiced by trial counsel's statements during closing arguments. While counsel "conced[ed]" that Britt "did what the State said he did," the unrefuted evidence at trial demonstrated that what counsel conceded in fact happened: Britt punched Widman and broke his nose. This was not a concession to the charge or to a conviction. The jury was still free to consider the unrefuted evidence to determine whether it was sufficient to meet the elements of the crime charged and whether Britt should be convicted of the assault on DCC Officer Widman. For that reason, Britt cannot show prejudice. In addition, we previously found there was sufficient evidence to support the conviction. Therefore, Britt cannot show a reasonable probability that but for counsel's concession regarding the evidence, the result of the proceeding would have been different. Because Britt cannot show prejudice, this claim fails.

## VI. CONCLUSION

For the reasons stated above, we affirm Britt's conviction and sentence. We also find that all claims of ineffective assistance of trial counsel raised by Britt fail.

AFFIRMED.