Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/02/2023 09:07 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
MUNIF J. ALKAZAHY, APPELLANT.
___ N.W.2d ___

Filed June 2, 2023.    No. S-22-480.

1. **Administrative Law: Statutes: Appeal and Error.** The meaning and interpretation of statutes and regulations are questions of law which an appellate court resolves independently of the lower court's conclusion.

2. **Sentences: Appeal and Error.** A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court.

3. ____: ____. An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result.

4. **Blood, Breath, and Urine Tests: Drunk Driving: Evidence: Proof.** The four foundational elements which the State must establish as a foundation for the admissibility of a breath test in a driving under the influence prosecution are as follows: (1) that the testing device was working properly at the time of the testing, (2) that the person administering the test was qualified and held a valid permit, (3) that the test was properly conducted under the methods stated by the Department of Health and Human Services, and (4) that all other statutes were satisfied.

5. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

6. **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the

offense and (8) the amount of violence involved in the commission of the crime.

7. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Lancaster County: Ryan S. Post, Judge. Affirmed.

Timothy S. Noerrlinger, of Naylor & Rappl Law Office, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## INTRODUCTION

Munif J. Alkazahy was convicted of driving under the influence (DUI) causing serious bodily injury, a Class IIIA felony. Alkazahy was found guilty following a suppression hearing and a bench trial; he was sentenced to a term of imprisonment, post-release supervision, and revocation of his driver's license. He appeals his conviction and sentence.

## BACKGROUND

On June 5, 2020, a pickup truck driven by Alkazahy failed to stop at a stop sign at the intersection of Highway 79 and West Branched Oak Road in Lancaster County, Nebraska, and collided with another vehicle. The other vehicle rolled onto its side, and the vehicle's passenger was injured. Law enforcement responded to the collision, and the injured passenger was transported to a hospital.

Lancaster County Deputy Sheriff Lance Johnson spoke with Alkazahy at the scene of the collision. Alkazahy smelled

strongly of alcohol, admitted that he had consumed some beers prior to the collision, and remarked that he was "going to jail." Alkazahy's two passengers indicated that Alkazahy was the driver and that the group had been drinking alcohol. Alkazahy submitted to a preliminary breath test, which indicated that .129 grams of alcohol were present per 210 liters of his breath. Johnson arrested Alkazahy for DUI. Due to the nature of the collision, Johnson did not ask Alkazahy to perform standard field sobriety tests. Instead, Johnson brought Alkazahy to a detoxification center in order to administer a chemical breath test. Following a 17-minute observation period, Johnson administered a breath test to Alkazahy using a "DataMaster" instrument with the serial number 300401 (DataMaster 300401). The DataMaster test indicated that .118 grams of alcohol were present per 210 liters of Alkazahy's breath.

On December 11, 2020, Alkazahy was charged with DUI causing serious bodily injury, in violation of Neb. Rev. Stat. § 60-6,198 (Reissue 2021), a Class IIIA felony. Alkazahy waived his rights to a jury trial and a speedy trial.

## Motion to Suppress

Before trial, Alkazahy moved to suppress the results of the DataMaster test. Alkazahy argued that the DataMaster results were inadmissible because DataMaster 300401's conformance testing was noncompliant with Neb. Rev. Stat. § 60-6,201 (Reissue 2021) and 177 Neb. Admin. Code, ch. 1, § 008 (2016). The court held a hearing on Alkazahy's motion, at which time the following relevant evidence was adduced or stipulated with regard to the DataMaster test.

Section 60-6,201 provides that to be considered valid, a chemical breath test must be performed "according to methods approved by" the Nebraska Department of Health and Human Services (DHHS) and, generally, "by an individual possessing a valid permit." Johnson had a valid permit and was qualified to administer the test. Additionally, applicable

DHHS regulations provide that a DataMaster is an approved evidentiary breath testing device.[1]

DataMasters use infrared absorption to analyze breath samples. They are subject to conformance testing. Specifically, 177 Neb. Admin. Code, ch. 1, § 001.15 (2016), provides that a "[m]aintenance officer" will perform "calibration verification" of evidentiary breath testing devices every 40 days. DataMasters can be tested using the target value of a premixed, certified mixture of alcohol and nitrogen (dry gas standards). Further, 177 Neb. Admin. Code, ch. 1, § 008.02 (2016), provides that all calibration equipment that has been approved by the National Highway Traffic Safety Administration (NHTSA) and published on its conforming products list of calibrating units for breath alcohol testers (Conforming Products List) is approved for calibration and verification of calibration of breath testing devices.

Investigator Grant Powell of the Lincoln Police Department is a maintenance officer for DataMaster 300401. Powell completed a certificate of accuracy on April 24, 2018, for DataMaster 300401. Powell used dry gas standards to test DataMaster 300401 on April 24, 2018, and May 13 and June 17, 2020. The second and third dates were, respectively, shortly before and after Alkazahy's breath was tested. DataMaster 300401 passed those tests; the calibration verifications on those dates produced a result within plus or minus 5 percent of the target value. However, the dry gas standards that Powell used (108 liters per 208 parts per million of ethanol and 108 liters per 390 parts per million of ethanol) do not appear on the NHTSA's 2012 Conforming Products List. The 2012 list is the most recent available.

The dry gas standards at issue were manufactured and certified by "Airgas" and sold to the Lincoln Police Department by "Intoximeters." Exhibit 11 is a letter from the NHTSA to Airgas, dated September 22, 2015, confirming that the

---

[1] See 177 Neb. Admin. Code, ch. 1, § 008.01A (2016).

dry gas standards at issue meet the model specifications for calibrating units. The letter indicates that the calibrating units would be included in the next update of the Conforming Products List. Exhibit 12 is a similar letter from the NHTSA to Intoximeters.

The district court focused its analysis on whether the DataMaster test was properly conducted under the methods stated by DHHS.[2] The district court observed that while the language of title 177 does not restrict DHHS from approving calibration equipment that is not on the Conforming Products List, the State presented no evidence that DHHS had done so. Thus, the district court identified as a dispositive issue whether the failure to use dry gas standards listed on the published list relates to a "method" used or a "technique."[3] The court concluded that the use of dry gas standards not published on the NHTSA's Conforming Products List was merely a deficiency in technique and did not preclude the court from admitting the test results. Thus, the court overruled Alkazahy's motion to suppress.

## Bench Trial

On March 24, 2022, a bench trial was held. The State offered, and the court received, 25 exhibits. Alkazahy jointly offered 13 of those exhibits. Alkazahy preserved the issue raised in his motion to suppress by timely objecting to the results of the DataMaster test and the documents offered in support of the DataMaster test. Johnson testified on behalf of the State. No other witnesses testified. Following trial, the court concluded that the State had met its burden of proof beyond a reasonable doubt, warranting conviction.

---

[2] See *State v. Jasa*, 297 Neb. 822, 901 N.W.2d 315 (2017).

[3] See *State v. Prescott*, 280 Neb. 96, 106, 784 N.W.2d 873, 883 (2010) ("[a]ny deficiencies in the techniques used to test the blood alcohol level in DUI cases generally are of no foundational consequence, but only affect the weight and credibility of the testimony").

## Sentence

At Alkazahy's sentencing hearing, the State emphasized "red flags" in Alkazahy's presentence investigation report and recommended the court impose a term of incarceration. Alkazahy requested probation with a "lengthy" period of supervision, consideration of house arrest, and a minimum period of revocation as to his license. Alkazahy stated that he had "changed [his] ways" and was "willing to keep doing better" and "be a good citizen."

The court explained that it had reviewed Alkazahy's presentence investigation report, as well as all additional information that had been submitted. The court explained that it had considered the comments of counsel and of Alkazahy. The court expressly stated that it had considered the relevant statutory factors, such as Alkazahy's age, education level, background, criminal record, and prior success on probation. The court emphasized that Alkazahy was a high recidivism risk and posed a substantial risk to the public. In its written order of sentence, the court explained:

> Having regard for the nature and circumstances of the crimes and the history, character and condition of [Alkazahy], the court finds that imprisonment of [Alkazahy] is necessary for the protection of the public because the risk is substantial that, during any period of probation, [he] would engage in additional criminal conduct and because a lesser sentence would depreciate the seriousness of [his] crimes and promote disrespect for the law.

The court sentenced Alkazahy to 18 months of imprisonment followed by 18 months of post-release supervision. The court also revoked Alkazahy's license for a period of 8 years.

## ASSIGNMENTS OF ERROR

Alkazahy assigns that the district court erred by overruling his motion to suppress the results of the DataMaster test and by imposing an excessive sentence.

## STANDARD OF REVIEW

[1] The meaning and interpretation of statutes and regulations are questions of law which an appellate court resolves independently of the lower court's conclusion.[4]

[2,3] A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court.[5] An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result.[6]

## ANALYSIS

### Motion to Suppress

[4] The four foundational elements which the State must establish for the admissibility of a breath test in a DUI prosecution are as follows: (1) that the testing device was working properly at the time of the testing, (2) that the person administering the test was qualified and held a valid permit, (3) that the test was properly conducted under the methods stated by DHHS, and (4) that all other statutes were satisfied.[7] Alkazahy does not dispute that the testing device was working properly at the time of the test, that the person administering the test was qualified and held a valid permit, and that other statutes were satisfied. Instead, Alkazahy contends that the test was not properly conducted under the methods stated by DHHS.

To be considered valid, tests of blood, breath, or urine made under Neb. Rev. Stat. § 60-6,197 (Reissue 2021) or tests of blood or breath made under Neb. Rev. Stat. § 60-6,211.02 (Reissue 2021) shall be performed according to methods

---

[4] *Jasa, supra* note 2.

[5] *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019).

[6] *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021).

[7] *Jasa, supra* note 2.

approved by DHHS.[8] DHHS may approve satisfactory techniques or methods to perform such tests.[9] The parties agree that chapter 1 of title 177 hosts the governing DHHS regulations in this case.

Under title 177, a method is defined as "the name of the principle of analysis" and "may be a laboratory method."[10] A laboratory method is a chemical analysis using laboratory procedures and instrumentation.[11] The failure to perform a test using the prescribed *methods* makes the test result inadmissible.[12] A technique is defined as a "set of written instructions which describe the procedure, equipment, and equipment prevent[at]ive maintenance necessary to obtain an accurate alcohol content test result."[13] Any deficiencies in techniques used to test the breath or blood alcohol level in DUI cases generally are of no foundational consequence, but only affect the weight and credibility of the testimony.[14]

Title 177 authorizes Class B permit holders to perform a chemical test to analyze a subject's breath for alcohol content using an approved method.[15] According to 177 Neb. Admin. Code § 008.01C (2016), "[i]nfrared absorption analysis using the Model DataMaster . . . and all instruments under the DataMaster [name]" is an approved method. Section 008.01A of title 177 specifically lists the DataMaster as an approved evidentiary breath testing method and instrument to be used by law enforcement. Prior to being placed into service, a DataMaster shall have its calibration checked with a "wet

---

[8] See § 60-6,201(3).

[9] *Jasa, supra* note 2.

[10] 177 Neb. Admin. Code, ch. 1, § 001.16 (2016).

[11] 177 Neb. Admin. Code, ch. 1, § 001.14 (2016).

[12] See *State v. Kubik*, 235 Neb. 612, 456 N.W.2d 487 (1990).

[13] See 177 Neb. Admin. Code, ch. 1, § 001.21 (2016).

[14] *Prescott, supra* note 3.

[15] See 177 Neb. Admin. Code, ch. 1, § 001.07B (2016).

bath simulator solution" or a "dry gas standard."[16] Section 008.02 provides that all calibration equipment that appears on the NHTSA's Conforming Products List is approved for "calibration and verification of calibration" of breath testing devices.

Notably, there is no dispute that Alkazahy's breath alcohol content was measured via infrared absorption analysis using a DataMaster and that the dry gas standards used in the DataMaster's conformance test met the NHTSA requirements. Relevant to this appeal, there is also no dispute that the dry gas standards did not appear on the most recent publication of the NHTSA's Conforming Products List. As a result, Alkazahy argues a deficiency as to the method of his breath test on the basis that "the failure to use a NHTSA approved standard" for calibration and verification of calibration directly relates to the actual scientific process in which breath tests are determined.[17] For this argument, Alkazahy relies on the Nebraska Court of Appeals' opinion in *State v. Rodriguez*.[18] His reliance is misplaced.

In *Rodriguez*, the defendant was convicted of DUI.[19] On appeal, the defendant argued that the district court had erred in receiving exhibits related to his chemical breath test, including a completed "Attachment 15."[20] Specifically, the defendant argued that the Attachment 15 was noncompliant with the methods prescribed by DHHS under title 177.[21] Observing that the Attachment 15 was deficient in technique, the Court of Appeals rejected the defendant's argument that the evidence was inadmissible.[22] The court explained that

---

[16] 177 Neb. Admin. Code, ch. 1, § 008.03A (2016).

[17] Brief for appellant at 12.

[18] *State v. Rodriguez*, 18 Neb. App. 104, 774 N.W.2d 775 (2009).

[19] *Id.*

[20] *Id.* at 110, 774 N.W.2d at 780.

[21] *Id.*

[22] *Id.*

deficiencies in the techniques used to test the blood or breath alcohol level in DUI cases generally are of no foundational consequence.[23]

The court concluded: "[T]he checklist is a technique because the Nebraska Administrative Code treats it as such and it is unrelated to the actual scientific process in which breath test results are determined."[24] In doing so, the court explained, "Attachment 15 is not the scientific process in which the breath test sample is actually analyzed"; i.e., it is not a "'principle of analysis'" or "'method.'"[25] Attachment 15, the court explained, merely provides the officer with "'written instructions'" which describe the necessary "'procedure.'"[26] Alkazahy employs the language referring to "scientific process" to indicate that because the calibration and verification of calibration of a DataMaster device potentially "relates" to the accuracy of test results, use of unapproved dry gas standards amounts to a deficiency in the method used.[27]

Here, however, the evidence is clear that the dry gas standards used to check the calibration of DataMaster 300401 had been evaluated by the NHTSA and found to "meet the model specifications for calibrating units" for breath alcohol tests. In actuality, Alkazahy's complaint is that the dry gas standards were not listed on the NHTSA's Conforming Products List, which had not been updated in over a decade. The use of dry gas standards which met the NHTSA's requirements but which had not yet been published on the Conforming Products List can hardly be considered a defect in the scientific process. As such, the deficiency complained of by

---

[23] *Rodriguez, supra* note 18.

[24] *Id.* at 110, 774 N.W.2d at 780.

[25] *Id.*

[26] *Id.*

[27] Brief for appellant at 9.

Alkazahy has no relationship with whether an approved principle of analysis was employed. Our prior analysis in *State v. Miller*[28] is instructive.

In *Miller*, the defendant appealed his motor vehicle homicide conviction and sentence.[29] Specifically, the defendant argued that the district court erred by admitting into evidence the results of a blood test which violated applicable regulations.[30] We observed that the applicable regulations required that blood samples be collected in a container having an anticoagulant-preservative in it and that it was undisputed that the defendant's blood was collected in a tube which did not contain such a substance.[31] We observed further that applicable regulations approved "direct injection into a gas chromatograph" as a "method" for measuring blood alcohol and that the evidence did not show noncompliance with the same.[32] We concluded that the requirements for the container in which the defendant's blood was collected had no bearing on the "method" used to test his blood.[33] Thus, we concluded that the district court did not err in admitting the results into evidence.[34]

Just as a DHHS-approved method was used to test the defendant's blood alcohol content in *Miller*, a DHHS-approved method was used to test Alkazahy's breath alcohol content in this case. In *Miller*, the method was direct injection into a gas chromatograph; here, the method was infrared

---

[28] *State v. Miller*, 213 Neb. 274, 328 N.W.2d 769 (1983), *modified, State v. West*, 217 Neb. 389, 350 N.W.2d 512 (1984).

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.* at 277, 328 N.W.2d at 771.

[33] *Id.* Cf. *State v. Fox*, 177 Neb. 238, 128 N.W.2d 576 (1964) (effect of improper amount of anticoagulant on test results goes only to weight and credibility of evidence).

[34] *Id.*

absorption analysis. Additionally, the evidence indicates that the DataMaster was properly calibrated at the time of the testing of Alkazahy's breath. As such, the State has met its foundational requirement with regard to the DataMaster test and the district court did not err in admitting its results.

## Sentence

[5-7] Alkazahy additionally argues that his sentence is excessive. Alkazahy's sentence was within the applicable statutory range. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.[35] In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.[36] The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[37]

Alkazahy argues that the district court abused its discretion by denying him probation based on the seriousness of the offense only. He argues that it is an abuse of discretion to "focus solely on the offense while essentially ignoring the offender himself."[38] As mitigating factors, Alkazahy

---

[35] *State v. Becker*, 304 Neb. 693, 936 N.W.2d 505 (2019).

[36] *Briggs, supra* note 5.

[37] *Id.*

[38] Brief for appellant at 14.

emphasizes that he is generally nonviolent and that he did not commit any additional crimes while his case was pending.

Nothing in the record indicates that the district court did not consider the mitigating factors that Alkazahy emphasizes. On the contrary, the district court specified that it had considered and applied all the relevant statutory factors, including Alkazahy's background and criminal history and the amount of violence involved in the commission of the crime. As such, we are unable to find that the district court abused its discretion in sentencing Alkazahy to a period of 18 months of imprisonment.

## CONCLUSION

The district court did not err in either assigned respect—accordingly, we affirm.

AFFIRMED.