IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. BECK


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

TAMMY S. BECK, APPELLANT.


Filed November 5, 2024.    Nos. A-24-138, A-24-139.


Appeals from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Robert Wm. Chapin, Jr., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.


MOORE, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Tammy S. Beck appeals from her plea-based convictions of two counts of attempted possession of methamphetamine. She contends that the district court erroneously found that her pleas were knowingly, intelligently, and freely given and in imposing excessive sentences. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

In June 2023, the State charged Beck, in two separate cases, with one count of possession of methamphetamine, each a Class IV felony. Pursuant to a plea agreement in which the cases were consolidated for the plea hearing, Beck pled no contest to reduced charges of two counts of attempted possession of methamphetamine, Class I misdemeanors. The court informed Beck of the nature of the charges, the potential immigration consequences of entering a plea, the

- 1 -

presumption of innocence, the right to a jury trial, the right to confront witnesses, the right against self-incrimination, and the range of penalties for the crimes charged.

Beck acknowledged that she had the opportunity to go over all the aforementioned rights with her lawyer, she did not need any additional time to confer with her lawyer, and she understood that she was freely and voluntarily waiving all of those rights. Beck also responded affirmatively when asked if she told her lawyer everything about the cases, that she was not aware of helpful information that she had not disclosed to her lawyer, that she was satisfied with the job that her lawyer had done for her, that she believed her lawyer was competent, that her lawyer had not refused or neglected to do anything that Beck had asked of her lawyer, and that she had sufficient time to discuss her cases with her lawyer and did not need any additional time to confer with her lawyer.

The State provided a factual basis which set forth that, in the first case, at 2:13 a.m. on December 24, 2021, officers conducted a traffic stop after observing a motorist fail to use a signal to turn. Upon contacting the driver and sole occupant of the vehicle, identified as Beck, the officer realized that he was familiar with Beck from previous narcotics investigations and knew her to be involved in the use of controlled substances, specifically methamphetamine. During this traffic stop, officers conducted a probable cause search after observing an open bottle of Jose Cuervo on the back seat of the vehicle. During the search, officers located additional open alcohol containers and a single hypodermic needle containing suspected methamphetamine residue inside of the back seat. The substance was later confirmed to be methamphetamine.

The State provided the following factual basis for the second case, which set forth that on October 8, 2021, officers conducted another traffic stop after observing a motorist fail to use a signal to turn. Officers had previously observed the same vehicle at a residence that was known to be involved in the use and sales of controlled substances, specifically methamphetamine. Officers contacted the driver and sole occupant of the vehicle, who was identified as Beck. As officers approached the vehicle, they observed Beck make furtive movements while seated in the driver's seat and appearing to be extremely nervous. Although Beck showed signs of recent drug use and admitted to smoking marijuana, she denied using methamphetamine for over a year and consented to a search of her person and vehicle. During the search of the vehicle, officers located a plastic container with 13.6 grams of marijuana inside. They also located several items of drug paraphernalia including a marijuana pipe, grinder, and plastic straw, all containing marijuana and methamphetamine residue. And, during a search of a backpack, officers located a single baggy containing suspected methamphetamine, which was later confirmed to be methamphetamine, and several prescription pill bottles with Beck's name on them.

At the sentencing hearing, the court noted that Beck had numerous convictions related to drug offenses, had a previous opportunity at probation, and "had opportunities all over the place to get your act together," and that "the natural consequence for breaking the law for you at this point in time is that you're going to be incarcerated because otherwise it just overlooks all of the mess that you get yourself into." The court specifically found:

> So having regard for the nature and circumstances for these crimes, your history, character, and condition, I absolutely find that imprisonment is necessary.

I find that the risk is nearly certain during any period of probation you would engage in additional criminal conduct, and I find that lesser sentences would depreciate the seriousness of these crimes and promote disrespect for the law.

For the offense that occurred on December 24, 2021, the district court sentenced Beck to 180 days' imprisonment with credit for 9 days previously served. For the offense that occurred on October 8, 2021, the court sentenced Beck to 180 days' imprisonment. The sentences were ordered to be served consecutively.

## III. ASSIGNMENTS OF ERROR

Beck identifies two assignments of error on appeal: that the district court erred in (1) finding that her pleas were knowingly, intelligently, and freely given and (2) imposing excessive sentences.

## IV. STANDARD OF REVIEW

A trial court is afforded discretion in deciding whether to accept guilty or no contest pleas, and an appellate court will reverse the trial court's determination only in the case of an abuse of discretion. See *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019).

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

## V. ANALYSIS

### 1. VOLUNTARINESS OF PLEA

Beck first assigns as error that the district court erred in finding that her pleas were freely, intelligently, voluntarily, and understandingly given. Beck contends that (a) the court did not advise her of her right to counsel during the plea hearing and (b) that the court made a "misstatement of the law" when informing Beck of her right to a pretrial hearing to determine the admissibility of any statement and that the court's misstatement rendered her plea invalid. Brief for appellant at 9.

#### (a) Lack of Advisement of Right to
#### Counsel During Plea Hearing

Beck asserts that the record shows the district court failed to advise her of her right to counsel during her plea hearing which advisement was necessary for the court to determine that she understood her rights and that her waiver of rights was freely, knowingly, intelligently, and voluntarily given.

This issue was addressed by the Nebraska Supreme Court in *State v. Carr*, 294 Neb. 185, 195, 881 N.W.2d 192, 199 (2016), wherein the court stated:

To support a finding that a defendant freely, intelligently, voluntarily, and understandingly entered a guilty plea, a court must inform a defendant about (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. The

record must also show a factual basis for the plea and that the defendant knew the range of penalties for the crime charged. Taking the foregoing steps is enough to ensure that a plea is a voluntary and intelligent choice among the alternative courses of action open to a defendant, which is the ultimate standard by which we test pleas of guilty or no contest.

Here, the record shows that the court informed [the defendant] of the nature of the charges, the right to confront witnesses, the right to a jury trial, the privilege against self-incrimination, and the range of penalties for the crimes charged. And the State provided a factual basis for the charges in both cases.

The record does not show that the court informed [the defendant] of the right to assistance of counsel. But this failure does not necessarily render the plea invalid if the defendant was actually represented by counsel. For example, we held in *State v. Watkins*[, 277 Neb. 428, 762 N.W.2d 589 (2009),] that the defendant's plea was valid despite the court's failure to inform him of the right to counsel because the defendant was accompanied by appointed counsel when he entered the plea, he told the court he had had enough time to discuss the plea agreement with his attorney and was satisfied with his attorney's efforts, and his attorney told the court that he had no reason to think that the defendant was not freely, intelligently, and voluntarily entering his plea.

We conclude that [the defendant] freely, intelligently, voluntarily, and understandingly entered his guilty and no contest pleas even if the court did not inform him of the right to counsel. Like the defendant in *Watkins*, [the defendant] had appointed counsel at his plea hearing. [The defendant] told the court he had spoken with his attorney about his trial rights and had had sufficient time to do so. [The defendant] also told the court that he was satisfied with his attorney and thought that she was competent. [The defendant's] attorney told the court that she had spoken with [the defendant] about his rights and thought that he understood them. She further said she believed [the defendant] was "freely, voluntarily, knowingly, and intelligently" waiving his trial rights.

*State v. Carr*, 294 Neb. at 195-96, 881 N.W.2d at 199-200.

Here, we similarly conclude that Beck freely, intelligently, voluntarily, and understandingly entered her no contest pleas, even if the court did not inform her of the right to counsel. The record reflects that the district court advised Beck of the nature of the charges, the right to confront witnesses, the right to a jury trial, the right against self-incrimination, the range of penalties for the crimes charged, and the presumption of innocence. The court also informed Beck of the potential immigration consequences of entering a plea. See Neb. Rev. Stat. § 29-1819.02(1) (Reissue 2016) (directing trial courts to administer the following advisement to a defendant prior to accepting a plea of guilty or no contest "to any offense punishable as a crime under state law, except offenses designated as infractions under state law": "IF YOU ARE NOT A UNITED STATES CITIZEN, YOU ARE HEREBY ADVISED THAT CONVICTION OF THE OFFENSE FOR WHICH YOU HAVE BEEN CHARGED MAY HAVE THE CONSEQUENCES OF REMOVAL FROM THE UNITED STATES, OR DENIAL OF NATURALIZATION PURSUANT TO THE LAWS OF THE UNITED STATES"). The State provided factual bases which supported the offenses.

The district court asked Beck if she understood the rights as set forth and Beck responded that she did. Beck acknowledged that she had the opportunity to go over all the aforementioned rights with her lawyer, that she did not need any additional time to confer with her lawyer, and that she understood she was freely and voluntarily waiving all of those rights. Beck also responded affirmatively when asked if she told her lawyer everything about the cases, that she was not aware of helpful information she had not disclosed to her lawyer, that she was satisfied with the job that her lawyer had done for her, that she believed that her lawyer was competent, and that her lawyer had not refused or neglected to do anything that Beck had asked of her lawyer, and that she had sufficient time to discuss her cases with her lawyer and did not need any additional time to confer with her lawyer. We agree with the Nebraska Supreme Court's statement in *State v. Neal*, 216 Neb. 709, 712, 346 N.W.2d 218, 220 (1984): "To hold that it is error upon a court's failure to inform a defendant of his right to counsel when a defendant has the benefit of counsel before the court and acknowledges that his counsel's representation has been satisfactory would be the epitome of slavish technicality." This assignment of error is without merit.

### (b) Misstatement During Advisement of Admissibility of Any Statements to Law Enforcement

Beck also contends that the court made a "misstatement of the law" when informing Beck of her right to a pretrial hearing to determine the admissibility of any statement and that the court's misstatement rendered her plea invalid. Brief for appellant at 9.

During the plea hearing, the following exchange occurred between the court and Beck:

THE COURT: If you have made any statement, admissions, or confessions to law enforcement or any other public official about these cases, you're entitled to a separate hearing to have me determine whether such statement, admission, or confession was made by you freely, voluntarily, knowingly, and intelligently.

If at that hearing I found that any one or more of those items was missing, then that statement, admission, or confession could [sic] be used against you at the time of a trial. Do you understand that?

[Beck:] Yes.

THE COURT: If I accept your pleas of no contest, you'll be waiving and giving up your right to have this type of hearing, Do you understand that?

[Beck:] Yes.

Beck correctly notes that the court mistakenly omitted the word "not" from its advisement. However, as we noted earlier in this opinion, the Nebraska Supreme Court has stated:

To support a finding that a defendant freely, intelligently, voluntarily, and understandingly entered a guilty plea, a court must inform a defendant about (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. The record must also show a factual basis for the plea and that the defendant knew the range of penalties for the crime charged. Taking the foregoing steps is enough to ensure that a plea is a voluntary and intelligent choice among the alternative

courses of action open to a defendant, which is the ultimate standard by which we test pleas of guilty or no contest.

*State v. Carr*, 294 Neb. 185, 195, 881 N.W.2d 192, 199 (2016). Thus, the advisement of the right to a separate suppression hearing is not part of the ultimate standard by which we test pleas of guilty of no contest.

Further, there is nothing in the record to indicate that Beck gave a statement to law enforcement, nor does Beck allege that she gave a statement to officers. Neb. Rev. Stat. § 29-2308(1) (Reissue 2016) provides, in part, that "[n]o judgment shall be set aside . . . in any criminal case . . . for error as to any matter of pleading or procedure if the appellate court, after an examination of the entire cause, considers that no substantial miscarriage of justice has actually occurred." And, although expressed in the context of the advisement of the immigration consequences, the Nebraska Supreme Court has recognized that the failure to give the advisement is not alone sufficient to entitle a convicted defendant to have the conviction vacated and the plea withdrawn. *State v. Yos-Chiguil,* 278 Neb. 591, 772 N.W.2d 574 (2009). A defendant must also allege and show that he or she actually faces an immigration consequence which was not included in the advisement given. *State v. Mena-Rivera,* 280 Neb. 948, 791 N.W.2d 613 (2010).

Although the record reflects that Beck received an incorrect advisement, because she has not alleged, nor does the record show, that the advisement had any bearing on Beck's case and that no substantial miscarriage of justice occurred, we decline to set aside Beck's no contest pleas. This assignment of error fails.

## 2. EXCESSIVE SENTENCES

Beck contends that the sentences imposed are excessive because the district court did not adequately consider certain factors in determining her sentence. Specifically, she contends that the court imposed sentences of 180 days' imprisonment despite her numerous physical and mental health issues, her 10th grade education, and her disability.

Beck was convicted of two counts of attempted possession of a controlled substance, both Class I misdemeanors. See, Neb. Rev. Stat. § 28-201 (Reissue 2016); Neb. Rev. Stat. § 28-416 (Cum. Supp. 2020). Beck's sentences of 180 days' imprisonment are within the statutory sentencing range for Class I misdemeanors which are punishable by a minimum of no imprisonment and a maximum of 1 year of imprisonment and/or a $1,000 fine. See Neb. Rev. Stat. § 28-106 (Reissue 2016).

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and

circumstances surrounding the defendant's life. *Id*. A sentencing court is not required to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021).

The presentence investigation reflected that Beck is 55 years old, single, and has four adult children. She completed the 10th grade and is not employed due to having been declared disabled in 2008. Beck's criminal history includes eight convictions for failure to appear; seven convictions for disturbing the peace; six convictions for possession of drug paraphernalia; three convictions each for making a false statement to a police officer and attempted possession of a controlled substance; two convictions each for trespassing and injuring or destroying the property of another; and single convictions for assault, writing a bad check, theft by unlawful taking (under $200), attempted second degree forgery, third degree assault (fighting by mutual consent), possession of marijuana (less than 1 oz.), driving during suspension, and various other minor offenses and traffic violations. She has been sentenced to jail, has had her driver's license suspended, has been ordered to pay fines, and has had a previous term of probation revoked. Beck also received a benefit from her plea agreement in which two Class IV felonies were reduced to Class I misdemeanors.

Beck admitted to being addicted to marijuana and methamphetamine and using alcohol, crack cocaine, LSD, mushrooms, and K2. Beck also reported having both physical and mental health issues.

Based upon factors including that the sentences imposed are within the statutory sentencing range for Class I misdemeanors, the benefit that Beck received from her plea agreement, Beck's criminal history, her prior revocation of probation, and her very high risk to reoffend, the sentences imposed were not an abuse of discretion.

## VI. CONCLUSION

Having considered and rejected Beck's assignments of error, her convictions and sentences are affirmed.

AFFIRMED.