IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. COLEMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MARZEANIS M. COLEMAN, APPELLANT.

Filed March 11, 2025.    No. A-24-414.

Appeal from the District Court for Jefferson County: DAVID J. A. BARGEN, Judge. Affirmed.

Tad D. Eickman for appellant.

Michael T. Hilgers, Attorney General, and Erin E. Tangeman for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Marzeanis M. Coleman appeals from his plea-based conviction for attempted robbery. In this direct appeal, Coleman contends that (1) the district court erred in denying his motion for absolute discharge; (2) his sentence was excessive; and (3) he received ineffective assistance of counsel. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

On July 5, 2022, Coleman was charged by information with robbery, a Class II felony; first degree assault, a Class II felony; possession of a stolen firearm, a Class IIA felony; operating a motor vehicle to avoid arrest, a Class IV felony; and first offense willful reckless driving, a Class III misdemeanor. Coleman filed a written plea of not guilty and waiver of appearance with his first trial counsel.

- 1 -

## 1. Pretrial Motions

On June 29, 2022, prior to the filing of the information, the State filed a motion for an order to produce identifying physical characteristics, specifically requesting to collect a sample of Coleman's DNA via buccal swab or blood draw. At the July 7 hearing, the State was prepared to introduce evidence in support of its motion, but Coleman, who opposed the motion, requested additional time to obtain a copy of the bill of exceptions from the preliminary hearing so his counsel could enter it into evidence. Based upon Coleman's request for additional time, the court continued the hearing to August 4.

At the August 4, 2022, hearing, the State adduced evidence in support of its motion and because Coleman had not yet received the bill of exceptions from the preliminary hearing, Coleman's counsel asked the court to keep the record open. The court granted that request, continued the matter to September 1, and ordered the parties to submit written briefs by the hearing date. At the September 1 hearing, Coleman offered the preliminary hearing bill of exceptions into evidence. Coleman also requested that the court extend the briefing deadline to September 9. The court granted Coleman's request and noted that the matter would be taken under advisement on September 9. On October 31, 2022, the court entered a written order granting the State's motion requesting a DNA sample and law enforcement obtained a buccal swab from Coleman on November 13.

During the August 4, 2022, hearing, Coleman also requested a continuance of the pretrial hearing that had been scheduled for that day. The court granted Coleman's request stating that the pretrial was continued until further order of the court.

Even though he was represented by counsel, on October 24, 2022, Coleman began filing various pro se requests including requests for bond reviews filed on October 24 and 31, 2022. Coleman's counsel also filed a motion for a bond review on October 31, which was addressed at a hearing held on November 3. The court continued Coleman's current bond.

On February 23, 2023, the State filed a motion to set a status hearing informing the court that the case was ready to proceed. The court scheduled a status hearing for March 2. During the status hearing, the court set the matter for a pretrial conference on March 9 and set the trial for March 28 to 30. Defense counsel indicated during the status hearing that Coleman would likely be filing a motion for discharge. The court stated that any motion for discharge could be heard at the pretrial conference hearing on March 9.

On March 6, 2023, Coleman's counsel filed a motion for absolute discharge alleging violations of Coleman's statutory and constitutional rights to a speedy trial. The hearing thereon was held on March 9 and the court took the matter under advisement. On June 29, the district court denied Coleman's motion for absolute discharge finding that his statutory or constitutional rights to a speedy trial were not violated. In its order, the court found that 3 days were excludable for Coleman's motion for bond review, and that another 124 days were excludable for the time between the filing of the State's motion for an order to produce identifying physical characteristics until the date the court granted that motion, as it was "a period of delay resulting from other proceedings concerning [Coleman]" under Neb. Rev. Stat. § 29-1207(4)(a) (Reissue 2016) because Coleman had refused to provide a DNA sample. Based upon these determinations, the court found that the State had until May 11, 2023, to bring Coleman to trial.

In September 2023, Coleman's original trial counsel was allowed to withdraw and counsel #2 entered his appearance as defense counsel. The following month, the court granted Coleman's request to represent himself, allowed counsel #2 to withdraw, and appointed counsel #3 as standby counsel. After the court granted Coleman's request to represent himself, Coleman filed numerous motions including motions to suppress and a second motion for absolute discharge based upon violations of his statutory and constitutional rights to a speedy trial. The district court denied Coleman's second motion for an absolute discharge finding that Coleman had permanently waived his statutory speedy trial right and that his constitutional right to a speedy trial was not violated.

## 2. PLEA AGREEMENT

On March 14, 2024, pursuant to a plea agreement, Coleman, now self-represented, pled guilty to the amended information charging him with attempted robbery, a Class IIA felony. The State dismissed the remaining counts. The State provided a factual basis that set forth that on April 16, 2022, Coleman and an accomplice drove to Fairbury in Jefferson County, Nebraska. During the trip, they planned to rob a certain fast food restaurant. At approximately 11 p.m., Coleman and his accomplice, each wearing a mask over their face and dressed in black clothing, entered the back door of the fast food restaurant, which was closed. Coleman took by force approximately $2,600 from the manager who was counting the cash. The manager was injured during the robbery, and she was prevented by Coleman from calling 911. An officer observed Coleman and his accomplice leave the fast food restaurant and drive away. Coleman was ultimately located and arrested.

## 3. SENTENCING

At the sentencing hearing, the court stated that it had read and considered the presentence investigation report and considered counsel's comments, and had considered the relevant factors including Coleman's age, mentality, education and experience, social and cultural background, past criminal record, or record of law-abiding conduct and motivation for the offense, as well as the nature of the offense. The court then stated:

> Mr. Coleman, let me just address you directly at this point. I want to explain that the sentence I have crafted for you, I have worked very hard to balance a number of things that Courts are asked to balance. We're asked to balance the law with the nature of the offense, with the defendant as they present to the Court, and all of the factors that I just mentioned are things that we take into consideration.

> In this case, while it is true that your criminal history is not the longest I have seen, I mean, there are some charges there. In this case the nature of the offense is what informs the Court's sentence the most . . . And as you can imagine, the nature of the offense was quite serious. It was a robbery, involved a high speed chase, involved a number of things that endangered persons' safety, the public, workers, and it was just a very brazen act that happened to this community.

> And so the Court must do its duty to hold persons accountable for those actions. So I just want you to understand where the Court is coming from as I pronounce sentence, and I am glad to hear that you are taking steps to improve things in your life. I hope you continue to do that. I hope that you continue to, even during the course of the sentence I

give you, take advantage of those things that are offered to make your life better and to come out of this hopefully a better person.

. . . So having considered that information and having regard for the nature and circumstances of the crimes and [your] history, character and conditions, I find [that you are] not a fit candidate for probation and that imprisonment is necessary for the protection of the public because there is a substantial risk that [you] would engage in additional criminal conduct during any period of probation, and a lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law.

The district court sentenced Coleman to 17 to 18 years' imprisonment with credit for 697 days previously served. Coleman appeals and is represented by different counsel than the counsel with whom he takes issue.

## III. ASSIGNMENTS OF ERROR

Coleman contends that (1) the district court erred in denying his motion for absolute discharge; (2) the sentence imposed was excessive; and (3) that his first trial counsel was ineffective in (a) "fail[ing] to adequately meet with [Coleman], failing [to] adequately . . . review discovery materials, and failing to discuss with the prosecution a proffer interview which could have provided some leniency" for Coleman; (b) "failing to file an interlocutory appeal of the district court's ruling on [Coleman's] first motion for complete discharge"; and (c) "failing to file [pretrial] motions" on Coleman's behalf. Brief for appellant at 11-12.

## IV. STANDARD OF REVIEW

A trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question that will be affirmed on appeal unless clearly erroneous. *State v. Chase*, 310 Neb. 160, 964 N.W.2d 254 (2021).

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

It is within the discretion of the trial court whether to impose probation or incarceration, and an appellate court will uphold the court's decision denying probation absent an abuse of discretion. *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013).

Whether a claim of ineffective assistance of counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Npimnee*, 316 Neb. 1, 2 N.W.3d 620 (2024). In reviewing a claim of ineffective assistance of counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

- 4 -

## V. ANALYSIS

### 1. Denial of Motion for Absolute Discharge

Coleman's first assigned error is that the district court erred in denying his motion for absolute discharge pursuant to Neb. Rev. Stat. § 29-1207 and § 29-1208 (Reissue 2016).

A voluntary guilty plea or plea of no contest generally waives all defenses to a criminal charge; thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

Here, Coleman entered pleas of no contest, and in doing so, he has waived any challenges to the district court's denial of his motion for discharge based upon the alleged violation of his right to a speedy trial. Accordingly, this assignment of error has been waived and we decline to consider it.

### 2. Excessive Sentence

Coleman's second assigned error is that his sentence was excessive. He concedes that the sentence imposed was within the statutory sentencing range but argues that the district court "ignored many of the relevant factors which should have been considered" including Coleman's background, his minimal criminal history, and his request for probation. Brief for appellant at 30.

Coleman was convicted of attempted robbery, a Class IIA felony. See, Neb. Rev. Stat. § 28-201 (Reissue 2016) (criminal attempt); Neb. Rev. Stat. § 28-324 (Reissue 2016) (robbery). Coleman's sentence of 17 to 18 years' imprisonment is within the statutory sentencing range for Class IIA felonies, which are punishable by a minimum of no imprisonment and a maximum of 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024) (Felonies; classification of penalties). Coleman also received a substantial benefit from his plea agreement by which not only was his charge reduced from a Class II felony to a Class IIA felony, but the State also agreed to dismiss three felonies and one misdemeanor.

When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The relevant factors for a sentencing judge to consider when imposing a sentence are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021).

According to the presentence investigation report, Coleman was 36 years old, single, and had no dependents. He has a 9th grade education. Coleman's criminal history includes two convictions for third degree assault and single convictions for negligent driving, assault, unauthorized use of a financial transaction device ($500 to $1,500), and unauthorized use of a

financial transaction device (under $500). The level of service/case management inventory assessed Coleman as a high risk to reoffend. The probation officer noted that Coleman "appear[ed] to lack remorse and accountability for his actions in this case" and recommended a straight sentence based on Coleman's criminal history and the facts of this case and indicated that anything less would promote disrespect for the law.

Based upon factors including that the sentence imposed was within the statutory sentencing range, the substantial benefit that Coleman received from his plea agreement, his criminal history that included multiple convictions for assault and unauthorized use of a financial transaction device, and his high risk to reoffend, the sentence imposed by the district court was not an abuse of discretion. Further, regarding Coleman's request for probation, based upon these same factors, we cannot say that the district court abused its discretion in failing to place Coleman on probation. This assignment of error fails.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Coleman's final assigned error is that his first trial counsel was ineffective in: (a) "fail[ing] to adequately meet with [Coleman], failing [to] adequately . . . review discovery materials, and failing to discuss with the prosecution a proffer interview which could have provided some leniency" for Coleman; (b) "failing to file an interlocutory appeal of the district court's ruling on [Coleman's] first motion for complete discharge"; and (c) "failing to file [pretrial] motions" on Coleman's behalf. Brief for appellant at 11-12.

Before addressing these claims, we first review the law in connection with ineffective assistance of counsel claims raised on direct appeal. In *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020), the Nebraska Supreme Court stated:

> In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

> When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims.

> In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

And, as the Nebraska Supreme Court stated in *State v. Parnell*, 305 Neb. 932, 945-46, 943 N.W.2d 678, 688 (2020):

> To prevail on a claim of ineffective assistance of counsel under *Strickland*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

### (a) Failure to Adequately Meet, Review Discovery, and Discuss Proffer Interview With Prosecution

Coleman's first claim of ineffective assistance of counsel is that his first trial counsel was ineffective in "fail[ing] to adequately meet with [Coleman], failing [to] adequately . . . review discovery materials, and failing to discuss with the prosecution a proffer interview which could have provided some leniency" for Coleman. Brief for appellant at 11.

Regarding Coleman's claims that his first trial counsel was ineffective in failing to adequately meet with him and failing to adequately review discovery materials, we find these claims are refuted by the record. As it relates to Coleman's conclusory allegations that his first trial counsel failed to meet with him and adequately review discovery materials, we note that the court appointed subsequent counsel, but Coleman opted to represent himself. As such, it was incumbent upon Coleman to review his own discovery and decipher his own case materials as it related to his decision to enter a plea. Having determined that it was in his own best interest to represent himself prior to entering his plea, we find no prejudice associated with Coleman's conclusory allegation that his first counsel insufficiently met with him or inadequately discussed discovery materials with him.

Regarding Coleman's claim that his first counsel was ineffective in failing to discuss with the prosecution a proffer interview which could have provided some leniency for him, we further find that the record establishes that Coleman cannot establish prejudice from his claim. Here, Coleman, who was originally charged with four felonies and one misdemeanor, entered into a very beneficial plea agreement with the State in which he pled to one reduced felony count and the remaining charges were dismissed. Coleman originally faced a maximum cumulative sentence of 123 years' imprisonment, but with his plea agreement, he faced a maximum of 20 years' imprisonment. Thus, Coleman's claim is refuted by the record because it shows that Coleman did, in fact, receive substantial "leniency" from the State.

### (b) Failure To Appeal Denial of Motion for Absolute Discharge

Coleman next claims that his first trial counsel was ineffective in "failing to file an interlocutory appeal of the district court's ruling on [Coleman's] first motion for complete discharge." Brief for appellant at 11.

When a defendant alleges that he or she was prejudiced by trial counsel's failure to properly assert the defendant's speedy trial rights, the court must consider the merits of the defendant's speedy trial rights under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018); *State v. Davis*, 31 Neb. App. 445, 982 N.W.2d 261 (2022). To calculate the deadline for trial for speedy trial purposes, a court must exclude the day the State filed the information, count forward 6 months, back up 1 day, and then add any time excluded under Neb. Rev. Stat. § 29-1207(4) (Reissue 2016). *State v. Davis, supra*. Excludable time periods include "[t]he period of delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel." § 29-1207(4)(b).

Here, the information was filed on July 5, 2022. Therefore, the speedy trial deadline, before adding any excluded time, was January 5, 2023. However, Coleman requested numerous pretrial continuances that extended the speedy trial clock. At the June 7, 2022, hearing on the State's motion for an order requesting to collect a sample of Coleman's DNA, the court continued the hearing to August 4 at Coleman's request. At the August 4 hearing, the court granted the request by Coleman's counsel to keep the record open and continued the matter to September 1. Counting these continuances alone, 86 days are excludable due to Coleman's request for a continuance of the hearing. Adding 86 days to the original speedy trial deadline of January 4, 2023, extended that deadline to March 31. Coleman filed his motion for absolute discharge on March 6, 2023, which was prior to the expiration of the speedy trial clock as extended by excludable time periods. Because an appeal of the district court's denial of Coleman's speedy trial claim would have been affirmed on appeal, Coleman cannot establish prejudice as a matter of law. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). This claim fails.

(c) Failure to File Pretrial Motions

Coleman's final claim of ineffective assistance of counsel is that his first trial counsel was ineffective in "failing to file [pretrial] motions" on Coleman's behalf. Brief for appellant at 12. The Nebraska Supreme Court has also made it abundantly clear since its decision in *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019), that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. See *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024) (citing numerous instances of adherence to this principle). See, also, *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020) (ineffective assistance of counsel claim not considered when assigned error did not specify counsel's deficient performance, even though argument section of brief discussed claims in detail).

Here, Coleman assigned as error that his first trial counsel was ineffective in "failing to file [pretrial] motions" but Coleman did not specify what pretrial motions trial counsel failed to file. This renders his allegation insufficient in failing to specifically allege trial counsel's deficiency. The Nebraska Supreme Court has held that when an appellant claims his or her trial counsel was ineffective for failing to file a motion but fails to explain with sufficient particularity the subject of the motion or why there would have been grounds for filing the motion, the appellant fails to sufficiently allege deficient performance. See *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). Allegations on direct appeal of ineffective assistance of trial counsel for failing to make a

motion under some broad category, such as motion to suppress, without more detail as to the subject of and grounds for the motion, are, like claims for failing to investigate or call "witnesses," mere placeholders. *Id*.

This claim fails for lack of sufficient specificity and is not preserved for postconviction review.

## VI. CONCLUSION

Based upon the analysis set forth herein, we affirm Coleman's conviction and sentence.

AFFIRMED.